**Alan T. JOHNSON, Mary Johnson, A M Industries, Inc., and Hydraulic Service & Supply, Inc., Plaintiffs,**

v.

**CON–VEY/KEYSTONE, INC., Donald Goeckner, Judith Goeckner, Robert Doran, Yvonne Doran, Charles Larecy, Joan Larecy, David Morton, Sharlee Morton, Rosemarie Tennant, and E.M. Woody Clark, Defendants.**

Civ. No. 92–1349–FR.

United States District Court, D. Oregon.

June 24, 1994.

---

J. Pierre Kolisch and Francine H. Gray, Kolisch, Hartwell, Dickinson, McCormack & Heuser, Portland, OR, for plaintiffs.

James D. Hibbard and Russell W. Pike, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for defendant Con–Vey/Keystone, Inc.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of defendant Con–Vey/Keystone, Inc. for partial summary judgment (# 69).

## UNDISPUTED FACTS

### 1. *Background Facts*

Defendant Con–Vey/Keystone, Inc. (Con–Vey) is in the business of manufacturing and marketing industrial lumber-handling equipment. In 1987, Con–Vey obtained a patent on a continuous breakdown hoist, a piece of industrial lumber-handling equipment used in saw mills. Con–Vey has marketed this continuous breakdown hoist since 1984.

At all relevant times, the plaintiffs, Alan T. Johnson and Mary Johnson, were the sole stockholders in AM Industries, Inc. and Hydraulic Service & Supply, Inc. (hereinafter collectively referred to as "AMI"). In early 1988, AMI began to market a continuous breakdown hoist.

In March of 1988, representatives of Con–Vey saw the continuous breakdown hoist marketed by AMI at the Portland Forest Industries Machinery Show. The continuous breakdown hoist marketed by AMI performed the same function as the continuous breakdown hoist for which Con–Vey had obtained a patent in 1987. Concerned about infringement of its patent, Con–Vey retained the law firm of Klarquist, Sparkman, Campbell, Leigh & Whinston to investigate possible infringement. The Klarquist law firm wrote to AMI on April 11, 1988, asking for information about the continuous breakdown hoist marketed by AMI.

AMI then contacted Robert Harrington, a patent attorney. Harrington told AMI that it was possible that it had infringed claim 9

of the Con–Vey patent. AMI then sought a second legal opinion. In a letter dated May 25, 1988, the consulting attorney advised counsel for Con–Vey that it was his opinion that claim 9 of Con–Vey's patent was not enforceable, and that AMI's continuous breakdown hoist did not infringe Con–Vey's patent. On June 27, 1988, counsel for Con–Vey sought further information about AMI's continuous breakdown hoist.

Con–Vey independently obtained photographs of AMI's continuous breakdown hoist when it examined one of AMI's hoists that had been purchased by the Crater Lake Lumber Co. After a review of the operation of AMI's hoist, counsel for Con–Vey concluded that AMI's continuous breakdown hoist infringed claims 9 and 10 of Con–Vey's patent.

On August 31, 1988, counsel for Con–Vey sent a letter to counsel for AMI demanding that AMI cease and desist the manufacture and sale of its hoist and demanding damages from AMI for its sale of a continuous breakdown hoist to the Crater Lake Lumber Co. When AMI refused to halt the marketing of its continuous breakdown hoist, Con–Vey filed a complaint for·infringement of its patent.

### 2. *The Preliminary Injunction*

In the patent infringement case, Con–Vey sought a preliminary injunction prohibiting AMI from manufacturing and selling its continuous breakdown hoist until the conclusion of the lawsuit. On March 7, 1990, the Honorable William M. Dale, United States Magistrate Judge, issued a preliminary injunction prohibiting AMI from manufacturing and selling its continuous breakdown hoist until the conclusion of the lawsuit.

Con–Vey mailed a copy of the injunction issued by Magistrate Judge Dale to Kaibab Forest Products, a prospective customer of AMI. At that time, Samuel W. Roundy of Kaibab Forest Products had a verbal agreement with AMI to purchase one of its hoists and had already purchased a piece of ancillary equipment from AMI. Although Roundy had not issued the purchase order for the AMI hoist, Dave Morton of Con–Vey told

Roundy that the ruling of Magistrate Judge Dale was temporary, and that the district court judge who would review that ruling could "agree or disagree." Morton told Roundy that, traditionally, a district court judge will agree with a magistrate judge, and the injunction will be in force until the trial is over. Morton also warned Roundy that if Kaibab Forest Products did business with AMI, he would not get delivery from AMI; that Con–Vey intended to put AMI out of business; and that if Kaibab Forest Products bought AMI's hoist, no parts would be available for the hoist in the future. As a result of the conversation with Dave Morton and the receipt of a copy of the opinion and ruling of Magistrate Judge Dale, Roundy did not purchase a continuous breakdown hoist from AMI.

In February of 1989, Con–Vey notified two or three hundred members of the timber industry by mail of its patent and the possible infringement of its patent by others in the trade. On February 14, 1989, AMI was notified of Con–Vey's mailing.

On June 4, 1990, this court set aside the findings of Magistrate Judge Dale and remanded this case to Magistrate Judge Dale to determine the validity of Con–Vey's patent. This court did not ask Magistrate Judge Dale to determine whether AMI's continuous breakdown hoist infringed Con–Vey's patent. Thereafter, Con–Vey withdrew its motion for a preliminary injunction, and the case came before this court for trial.

### 3. Discovery Issues in the Patent Infringement Case

In its answer to Con–Vey's complaint, AMI alleged that its hoist did not infringe Con–Vey's patent and further alleged that Con–Vey's patent was invalid. During discovery, a dispute arose because Con–Vey could not locate the original drawings of its breakdown hoist. Because the original drawings could not be located, Con–Vey recreated the drawings in response to AMI's request for production. In its response to AMI's request for production, Con–Vey stated: "Document 10000001 bears a 4–16–84 date. This is the date of conception. This drawing is a reconstruction of an earlier drawing which cannot presently be located. The drawing date is March 1989."

Shortly before trial, AMI sought to amend the pretrial order to raise the defense of unclean hands. The court denied the motion as untimely, but allowed AMI to present evidence before the Patent Office on the issue of whether Con–Vey engaged in inequitable conduct in obtaining its patent.

### 4. The Patent Infringement Trial and the Court's Judgment

A trial was held in April of 1991. AMI objected to the introduction into evidence of the recreated drawings. Both parties submitted post-trial memoranda and proposed findings of fact and conclusions of law. In its post-trial memoranda and proposed findings of fact and conclusions of law, AMI argued that both AM Industries, Inc. and Hydraulic Service & Supply, Inc. had been injured by Con–Vey's inequitable conduct during the patent prosecution.

On September 19, 1991, this court ruled against Con–Vey on its claims of infringement. The court also declined to award attorney fees to any party, concluding that no party had filed frivolous claims. On November 8, 1991, the court entered a judgment of non-infringement, ruling that AMI did not infringe claims 9 and 10 of the Con–Vey patent, that claims 9 and 10 of Con–Vey's patent were not invalid for obviousness, and that Con–Vey was not guilty of inequitable conduct before the Patent Office. On August 13, 1992, the United States Patent Court of Appeals upheld the decision of this court.

In the third amended complaint, AMI alleges that Con–Vey engaged in unfair competition, intentionally interfered with prospective business relationships, and violated federal and state antitrust laws. The allegations are based on the acts taken by Con–Vey in its patent infringement lawsuit against AMI.

### APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.,* 638 F.2d 136, 140 (9th Cir.1981). Finally, summary judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.,* 575 F.2d 692, 699 (9th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

## CONTENTIONS OF THE PARTIES

Con–Vey contends that AMI's antitrust claims are barred by the *Noerr–Pennington* doctrine, and that AMI's counterclaims for unfair competition and the intentional interference with prospective business relationships are barred by the doctrines of res judicata, collateral estoppel and Fed.R.Civ.P. 13(a) governing compulsory counterclaims.

AMI contends that the *Noerr–Pennington* doctrine applies only when antitrust damages are based solely on a prior infringement lawsuit. AMI also argues that the facts upon which the claims in this case are based arose after the patent infringement case was filed and that these facts did not exist at the time that the claim that formed the basis of the patent infringement case arose. AMI further argues that once AMI became aware of the behavior of Con–Vey, AMI tried to amend the pretrial order to include allegations of inequitable conduct, but the court denied the request as untimely.

## ANALYSIS AND RULING

### 1. *The Antitrust Claims*

■ Con–Vey argues that the antitrust claims of AMI filed pursuant to 15 U.S.C. §§ 2, 15 and O.R.S. § 646.780 are barred by the *Noerr–Pennington* doctrine. The *Noerr–Pennington* doctrine was established by the United States Supreme Court in *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), the *Noerr–Pennington* doctrine was extended to all types of civil litigation. The *Noerr–Pennington* doctrine is an immunity rule: federal antitrust laws are not violated by the conduct of private parties that consists merely of attempts to solicit government action, like the instigation of a lawsuit, but which may also have an anticompetitive effect.

In *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus.,* —— U.S. ——, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), the United States Supreme Court held that the *Noerr–Pennington* doctrine provides absolute immunity to an antitrust litigant based upon the filing of a prior infringement lawsuit, unless the prior litigation was "sham litigation." The Court established a two-part test to determine what is sham litigation:

First, the lawsuit must be objectively baseless in the sense that no reasonable litigant

could realistically expect success on the merits.... Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere *directly* with the business relationships of a competitor" ... through the "use [of] the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon."

—— U.S. at ——, 113 S.Ct. at 1928 (emphasis in original; citations omitted).

■ On November 8, 1991, this court found that the claims of Con–Vey in its patent infringement case were not frivolous for the purpose of awarding attorney fees. Therefore, this court has already determined that Con–Vey's patent infringement case was not objectively baseless. The court finds here that Con–Vey's patent infringement case was not sham litigation for the purposes of the *Noerr–Pennington* doctrine and cannot, by itself, be the basis of an antitrust violation.

AMI argues, however, that even though Con–Vey's patent infringement case was not sham or frivolous litigation, immunity under the *Noerr–Pennington* doctrine is not appropriate here because the *Noerr–Pennington* doctrine is limited to those cases where a claim for antitrust damages is based *solely* on prior sham litigation. AMI reasons that the *Noerr–Pennington* doctrine does not extend to cases where the antitrust allegations include activities which constitute a scheme of anti-competitive activity in addition to the filing of the anti-trust lawsuit.

AMI cites *Professional Real Estate Investors, Inc., supra,* in support of its argument. In *Columbia Pictures Indus. v. Professional Real Estate Investors, Inc.,* 944 F.2d 1525 (9th Cir.1991), the United States Court of Appeals for the Ninth Circuit established a test for determining whether allegations of conduct, other than the filing of the infringement case, could fall within the reach of *Noerr–Pennington.* The court held:

A decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit and not a separate and distinct activity which might form the basis for antitrust liability. Consequently PRE's ability to establish that the Movie Studios' refusal to deal violated the Sherman Act depends on its success or failure in showing that the copyright infringement action is actionable under the federal antitrust laws. *See generally Aircapital Cablevision, Inc. v. Starlink Communications Group, Inc.,* 634 F.Supp. 316, 326 (D.Kan.1986) (where underlying litigation is not a sham, attendant publicity is protected by *Noerr–Pennington* doctrine).

944 F.2d at 1528–29.

■ Thus, the *Noerr–Pennington* doctrine is not limited, as AMI suggests, to cases where the antitrust claim is based solely on the filing of a prior infringement suit; rather, immunity under the *Noerr–Pennington* doctrine extends to conduct which is incidental to the prior infringement case and is not a separate and distinct basis for antitrust liability.[1] The United States Court of Appeals for the Ninth Circuit held in *Professional Real Estate Investors, Inc.* that *Noerr–Pennington* does not bar federal antitrust claims where a separate and distinct basis for antitrust liability has been plead. Therefore, a defendant seeking immunity from an antitrust claim must allege that the ancillary claims of the plaintiff do not provide a separate and distinct basis for antitrust liability. The court finds that Con–Vey has not satisfied this burden as to the federal antitrust claims of AMI.

■ Finally, Con–Vey has not provided any citation in support of its argument that the *Noerr–Pennington* doctrine applies to the antitrust claim alleged by AMI under the laws of the State of Oregon. The court finds that Con–Vey is not entitled to judgment as a matter of law based on the *Noerr–Pennington* doctrine on the claim of AMI filed pursuant to O.R.S. 646.780.

### 2. *Res Judicata*

■ Con–Vey argues that if the *Noerr–Pennington* doctrine does not apply, then the antitrust claim of AMI under O.R.S. 646.780

---

1. Upon review, the Supreme Court specifically declined to disturb the Ninth Circuit's finding on this issue. —— U.S. at —— n. 2, 113 S.Ct. at 1924 n. 2.

is barred by the doctrine of res judicata. In addition, Con–Vey contends that the claims of AMI for antitrust violations, unfair competition, and intentional interference with prospective business relationships are barred by the doctrine of res judicata.

The doctrine of res judicata bars all grounds for recovery which could have been asserted in a prior lawsuit between the same parties in the same cause of action. *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201 (9th Cir.1982). In *Costantini,* the United States Court of Appeals for the Ninth Circuit held that the crucial question is whether a party has stated "in the instant suit a cause of action different from those raised in his first suit." *Id.* In determining whether successive suits involve the same cause of action, the *Costantini* court set out four factors:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* at 1201–02 (quoting *Harris v. Jacobs,* 621 F.2d 341, 343 (9th Cir.1980). Applying the factors set out above, the court finds that summary judgment in favor of Con–Vey on the basis of res judicata is not appropriate. The prior lawsuit involved the determination of the rights of the parties with respect to the patent on the continuous breakdown hoist. In an antitrust suit, the parties rights with respect to their competitive activities are adjudicated. The evidence before the court in the patent infringement case related primarily to the mechanical aspects of the machines involved. The court allowed evidence of Con–Vey's conduct because of the defense of unclean hands, and even then the evidence of Con–Vey's conduct was limited to Con–Vey's dealings with the Patent Office. *See* Minute Order dated March 15, 1991. Because the court limited AMI's defense of unclean hands, no evidence of letters to the timber industry or telephone calls to individual customers was before the court in the patent infringement case.

The set of facts which gave rise to the patent infringement case are different from the set of facts concerning whether the actions of Con–Vey during and after the patent infringement case constitute unfair competition, the intentional interference with the business of AMI, or an antitrust violation. In fact, the allegation of AMI that Con–Vey misrepresented the outcome of the patent infringement case to members of the industry could not have been made until after the patent infringement case had been decided. Considering the factors set out in *Costantini,* the court finds that the allegations of AMI in this case are different from the allegations of AMI in the prior lawsuit.

### 3. *Collateral Estoppel*

■ Under the doctrine of collateral estoppel, an actual and necessary determination of an issue by a court of competent jurisdiction is conclusive in a subsequent case based on a different cause of action but involving a party to the prior litigation. *Johnson v. Mateer,* 625 F.2d 240, 243 n. 5 (9th Cir.1980). Con–Vey contends that the following issues are barred by the doctrine of collateral estoppel: (1) whether Con–Vey filed and prosecuted the patent infringement case in bad faith; (2) whether Con–Vey manufactured evidence in the patent infringement case; (3) whether Con–Vey sent potential customers a copy of the ruling of Magistrate Judge Dale with the intent to mislead those customers; and (4) whether the notice sent by Con–Vey to at least two hundred members of the timber industry advising them of the patent infringement case and warning them of potential exposure to liability was inequitable conduct.

The issue of whether the patent infringement case was filed by Con–Vey in good faith was decided by this court on September 19, 1991, when this court denied Con–Vey's claims of infringement and declined to award attorney fees, concluding that the claims of neither party were frivolous. The finding of the court on this issue in the patent infringement case is conclusive. AMI cannot base its state antitrust or common law claims on

Con–Vey's filing of the patent infringement case.

Likewise, the issue of whether Con–Vey manufactured evidence was necessarily determined by this court as part of the patent infringement case when AMI objected to the admission of the recreated drawings. AMI was aware that these drawings were not original drawings at the time it objected to their admission in the patent infringement case. The court's evidentiary ruling is binding on AMI and will not be reconsidered here. AMI is estopped from claiming in this action that the drawings were manufactured by Con–Vey in an attempt to broaden the scope of the patent.

■ Con–Vey argues that the two remaining issues—whether Con–Vey sent potential customers a copy of the ruling of Magistrate Judge Dale with the intent to mislead those customers, and whether the notice sent by Con–Vey to at least two hundred members of the timber industry constitutes inequitable conduct—are barred by the doctrine of collateral estoppel because these two issues were actually and necessarily determined in the patent infringement case. Con–Vey relies on AMI's discussion of these issues in its post-trial memoranda and its proposed findings of fact which were submitted to the court in support of this contention. However, even though AMI argued these issues to the court, neither issue was determined by the court. In denying the motion of AMI to amend the pretrial order, the court excluded these issues from determination. *See* Minute Order dated March 15, 1991. Therefore, the bar of collateral estoppel does not apply.

### 4. *Fed.R.Civ.P. 13(a)*

■ Con–Vey contends that the claims of AMI here were compulsory counterclaims in the prior lawsuit and are barred by Fed. R.Civ.P. 13(a) from being litigated in this case. Fed.R.Civ.P. 13(a) provides, in relevant part:

A pleading shall state as a counterclaim any claim *which at the time of serving the pleading* the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does

not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. (Emphasis added).

AMI argues that Fed.R.Civ.P. 13(e), rather than Fed.R.Civ.P. 13(a), applies in this case because the facts giving rise to AMI's claims of unfair competition and the intentional interference with prospective business relationships arose after the filing of the patent litigation.

It is undisputed that Con–Vey sent at least one of its potential customers a copy of the ruling of Magistrate Judge Dale, and that Con–Vey sent notice of the patent infringement case and its potential for harm to at least two to three hundred members of the timber industry. In addition, AMI alleges that Con–Vey misrepresented the outcome of the prior lawsuit, a fact which Con–Vey disputes. However, all of these acts occurred after the filing of the patent infringement complaint.

Rule 13(a) only applies to claims in existence "at the time of serving the pleading." An after-acquired claim is not considered a compulsory counterclaim under Fed.R.Civ.P. 13(a), and failure to interpose it will not bar its assertion in a later lawsuit. Wright and Miller, *Federal Practice and Procedure* § 1428. Therefore, Fed.R.Civ.P. 13(a) does not bar claims which are based on after-acquired facts.

■ Fed.R.Civ.P. 13(e) applies to after-acquired claims: "A claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading." In the patent infringement case, AMI moved the court to amend the pretrial order in order for it to raise the defense of unclean hands, the issue that it now wishes to raise in this court. The court denied the motion as untimely, exercising its discretion under Fed.R.Civ.P. 13(e).

Con–Vey argues that the Restatement of Judgments § 25, Comment B, acts as a bar because the court declined to grant leave to AMI to amend the pretrial order based on the untimeliness of the request in the patent infringement case. However, the seeming untimeliness of AMI's motion to amend was

not necessarily due to its dilatory conduct, as Con–Vey asserts. Rather, AMI's motion to amend was, in large part, caused because Con–Vey's acts did not occur until well after the patent infringement case had been filed. The claims that AMI seeks to litigate here were not simply "left out" of AMI's answer; the claims were unknown until after discovery was completed in the patent infringement case.

Therefore, to the extent that AMI's claims of unfair competition, the intentional interference with prospective business relationships, and the violation of antitrust laws under the laws of the State of Oregon are based on facts arising after the filing of the patent infringement case, the bar of Fed.R.Civ.P. 13(a) does not apply. However, AMI is limited to asserting only those claims which were not actually litigated in the patent infringement case.

## CONCLUSION

The motion of Con–Vey for partial summary judgment (# 69) is denied as to the antitrust claims, the unfair competition claims, and the intentional interference with prospective business relationship claims. The allegations of AMI based on Con–Vey's filing of the patent infringement case and on the recreated mechanical drawings are barred by the doctrines of collateral estoppel and *Noerr–Pennington* immunity.