**MAGNESYSTEMS, INC., Plaintiff,**

v.

**NIKKEN, INC., and Nu–Magnetics, Inc., Defendants.**

**No. CV94–0715 ABC (EEx).**

United States District Court, C.D. California.

July 30, 1996.

---

Ronald W. Reagin, Stanley W. Sokoloff, Blahely, Sokoloff, Taylor & Zafman, Los Angeles, CA, for plaintiff.

Edwin D. Schindler, New York City, Daniel Cislo, Santa Monica, CA, for defendants.

## ORDER RE: DEFENDANTS' MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIMS

COLLINS, District Judge.

Defendants' Motion for Leave to File an Amended Answer and Counterclaims was taken under submission on June 3, 1996. After reviewing the materials submitted by the parties and the case file, it is hereby ORDERED that Defendants' motion is DENIED.

### I. Factual and Procedural Background

This is a patent infringement case. Plaintiff MAGNESYSTEMS, INC., ("Magnesystems") owns all rights and interests in United States Letters Patent No. 4,489,711 (" '711 Patent"). The U.S. Patent and Trademark Office ("PTO") issued the '711 Patent to Arno W. Latzke for the "magnetic plaster," a magnetized elastic sheet product which can be therapeutic when applied to a person's skin. On February 1, 1994, Plaintiff filed a Complaint against Defendants NIKKEN USA, INC. and NU–MAGNETICS, INC., (collectively "Nikken") for making, using, and selling, without a license from Plaintiff, a line of magnetized elastic sheet products that infringe upon '711 Patent.

On February 23, 1994, Defendants filed an Answer and Counterclaims alleging that their competing product was distinguishable from Plaintiff's product because Defendants' product resembled a "checkerboard" whereas Plaintiff's product was "striped."

On May 9, 1994, Plaintiff and Defendants cross-moved for summary judgment on the question of Defendants' infringement of the '711 Patent and the validity of the '711 Patent. On June 13, 1994, the Court granted summary judgment in favor of Plaintiff, ruling, as a matter of law, that Defendants have infringed upon the '711 Patent and that the '711 Patent is valid.

On June 23, 1994, Defendants filed a Notice of Appeal, announcing that they were appealing the Court's judgment entered on June 16, 1994. On June 30, 1994, Plaintiff filed a motion for an amendment to the judgment on June 16, 1994 to provide for the entry of a permanent injunction. On August 8, 1994, the Court issued a permanent injunction against Defendants from manufacturing and selling their infringing product. In the same Order, the Court also denied Defendants' cross motions for a stay of the injunction pending appeal and stay of all proceedings pending PTO reexamination proceedings, and granted Defendants' motion for a stay of discovery pending appeal.

On August 30, 1994, the Federal Circuit denied Defendants' motion to declare the district court to be without authority to issue an injunction and Defendants' motion for stay, pending appeal and/or reexamination. On July 17, 1995, the Federal Circuit affirmed the Court's summary judgment and injunction orders and remanded the case back to this Court for further proceedings.

On the basis of prior art not previously presented to or considered by this Court, Defendants contemporaneously instituted re-

examination proceedings against the '711 Patent in the PTO. On September 11, 1995, the Court granted Defendants a further stay on proceedings until the PTO rendered a decision. In a Joint Status Report filed on December 15, 1995, the parties notified the Court that on December 1, 1995, the PTO issued its Notice of Intent to Issue Reexamination Certificate, in which the reexamination was terminated with the patentability of all of the claims of the '711 Patent being confirmed by the PTO. In a Joint Status Report issued on February 5, 1996, the parties agreed that there was no longer any reason to stay this action. Accordingly, the Court lifted the stay on proceedings.

On May 13, 1996, Defendants filed this Motion for Leave to File an Amended Answer and Counterclaims. Defendants request the addition of both counterclaims and affirmative defenses.

Defendants move to add the following counterclaims: (1) first counterclaim for declaratory judgment of invalidity of the '711 Patent on the ground of anticipation by prior art pursuant to 3 U.S.C. § 102(b); (2) second counterclaim for declaratory judgment of invalidity of the '711 Patent on the ground of obviousness over the prior art pursuant to 35 U.S.C. § 103; (3) third counterclaim for Magnesystems' infringement of Defendants' Patent No. 5,277,692 (" '692 Patent"); (4) fourth counterclaim for Magnesystems' infringement of Patent No. 5,514,072 (" '072 Patent"); (5) fifth counterclaim for a declaratory judgment that Defendants do not infringe the '711 Patent in light of the separate patentability of the "checkerboard" pattern flexible magnetic pad product by Defendants; (6) sixth counterclaim for declaratory judgment that '711 Patent is unenforceable against Defendant under the equitable doctrine of "unclean hands."

Defendants also move to add the following affirmative defenses: (1) second affirmative defense that Defendants' "checkerboard" pattern of flexible magnetic pad product, being novel and nonobvious over that which is disclosed and claimed in the '711 Patent does not infringe the '711 Patent literally or under the doctrine of equivalents; (2) third affirmative defense that independent claims 1 and 12 of '711 Patent are anticipated by Tanaka, French Patent No. 1,215,110 ("Tanaka Patent"), published April 14, 1960, pursuant to 35 U.S.C. § 102(b) and/or obvious over the Tanaka Patent, considered singly or, in the alternative, considered in view of Miyake, Japanese Patent Application No. Sho 56–7405 ("Miyake Patent"), published January 26, 1981, pursuant to 35 U.S.C. § 103, and therefore invalid; (3) fourth affirmative defense that Claims 1–15 of the '711 Patent are obvious over the Tanaka Patent, considered singly or, in the alternative, considered in view of the Miyake Patent, and/or Van den Bulke, French Patent No. 2,371,916 ("Van den Bulke Patent"), published June 23, 1978, pursuant to 35 U.S.C. § 103, and are therefore invalid; (4) fifth affirmative defense asserting the doctrine of unclean hands against Plaintiff for willfully infringing upon Defendants' '692 Patent; (5) sixth affirmative defense asserting the doctrine of unclean hands against Plaintiff for willfully infringing upon Defendants' '072 Patent. On May 20, 1996, Plaintiff filed an Opposition. Defendants filed their Reply on May 28, 1996.

## II. Discussion

### A. Standards for the Addition or Amendment of Counterclaims and Affirmative Defenses

#### 1. After–Acquired Counterclaims

 Federal Rule of Civil Procedure 13(e) provides, in pertinent part: "[a] claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading." Fed.R.Civ.P. 13(e). Federal Rule 13(e) applies when facts giving rise to a claim arise after the filing of the complaint. Fed. R.Civ.P. 13(e). *AM Industries, et. al. v. Con–Vey/Keystone, Inc., et. al.,* 856 F.Supp. 1443, 1450 (D.Or.1994). The moving party is limited to asserting only those claims which were not actually litigated in the case. *Id.* at 1451.

 Courts have considered Federal Rule 13 in conjunction with Federal Rule 15, applying factors to consider for leave to amend to counterclaims. *See Intel v. Hyun-*

*dai Elec. America, Inc.,* 692 F.Supp. 1113, 1117 (N.D.Cal.1987). Federal Rule 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given as justice so requires." Fed.R.Civ.P. 15(a). In deciding whether to grant leave to amend, "a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *United States v. Webb,* 655 F.2d 977, 979 (9th Cir.1981). This policy of favoring amendments to pleadings "is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990). "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir.1987) (citations omitted). "These factors, however, are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." *Id.* (citations omitted).

### 2. Affirmative Defenses

An affirmative defense not listed under Federal Rule of Civil Procedure 12 may be added by amendment pursuant to Federal Rule 15(a). Fed.R.Civ.P. 12(h);[1] Fed. R.Civ.P. 15(a). The factors that applied above are also appropriate here.

### B. Analysis

For the sake of clarity, the counterclaims and affirmative defenses will be grouped according to the subject matter.

### 1. Third Affirmative Defense, Fourth Affirmative Defense, First Counterclaim, and Second Counterclaim Re: Invalidity of '711 Patent.

Defendants seek to amend their Answer and Counterclaims to assert that the '711 Patent is invalid because, pursuant to 35

U.S.C. § 102(b), claims 1 through 12 of the '711 Patent are anticipated by and are obvious over the Tanaka and/or Miyake Patents and are obvious over the Van den Bulke Patent. Defendants' Amended Answer ¶¶ 24, 26, 35, and 45.

On June 13, 1994, the Court held that the '711 Patent was valid. *See* Order (dated June 16, 1994). The Federal Circuit affirmed the Court's ruling on July 17, 1995 without opinion. *See* Order (dated July 17, 1995). Defendants contend, however, that the specific issues of the '711 Patent's invalidity over the Tanaka, Miyake, and Van den Bulke Patents have never been considered by the Court or the Federal Circuit. Accordingly, Defendants argue that the Court should reconsider the validity of the '711 Patent in light of these other patents. In addition, Defendants contend that this Court is not bound by the Federal Circuit's July 17, 1995 affirmance of the June 13, 1994 validity finding because the Federal Circuit's decision came as a result of an interlocutory appeal pursuant to 28 U.S.C. § 1292(c)(2). Defendants' Motion at 17–19 (citing *Mendenhall v. Barber–Greene Co.,* 26 F.3d 1573 (Fed.Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 582, 130 L.Ed.2d 496 (1994)).

■ It is a basic principle of federal practice that "courts generally ... refuse to reopen what has been decided...." *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). As stated by the United States Supreme Court, were it otherwise, "there would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate of chances from changes of its members." *Roberts v. Cooper,* 61 U.S. (20 How.) 467, 481, 15 L.Ed. 969 (1857).

■ This basic principle is generally referred to as the "law of the case" doctrine. *See* 18 Charles A. Wright, Arthur R. Miller,

---

**1.** The 1966 Amendments eliminated some ambiguity as to which affirmative defenses were waived if not raised in a pleading. Amended subdivision (h)(1)(A) states that certain specified defenses which were available to a party when he made a preanswer motion, are waived. Fed. R.Civ.P. (h)(1)(A). The specified defenses are lack of jurisdiction over the person, improper venue, insufficiency of process, and insufficiency of service of process. *See* Fed.R.Civ.P. 12(b)(2)–(5).

Edward H. Cooper, *Federal Practice and Procedure* § 4478 at 788 ("Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit."); *see also Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2177–78, 100 L.Ed.2d 811 (1988) (citing 1B J. Moore, et al., *Moore's Federal Practice* ¶ 0.404[1] at 118) (the law of the case doctrine "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.' "); *White v. Murtha*, 377 F.2d 428, 431 (5th Cir.1967) (law of the case doctrine is based "on the salutary and sound public policy that litigation should come to an end."). Under this doctrine, "[i]ssues decided at an earlier stage of the litigation, either explicitly or by necessary inference from the disposition of the issues, constitute the law of the case." *Johns–Manville Corp. v. Guardian Industries Corp.*, 116 F.R.D. 97, 101 (E.D.Mich. 1987) (citing *Kori Corp. v. Wilco Marsh Buggies & Draglines*, 761 F.2d 649, 657 (Fed. Cir.), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985)). A court will generally not depart from the law of the case unless one of three "exceptional" situations is presented: (1) an intervening change in controlling law; (2) new evidence has surfaced; or (3) the previous disposition has resulted in clear error or manifest injustice. 18 Wright, et al., § 4478 at 790; *see also Alliance for Cannabis Therapeutics v. D.E.A.*, 15 F.3d 1131, 1134 (D.C.Cir.1994).

■ Commonly, the law of the case doctrine arises in the context of a single court adhering to its own rulings. *See* Wright, et al. § 4478 at p. 788. In such a situation, the doctrine "does not constitute a limitation on the court's power." *Slotkin v. Citizens Cas. Co.*, 614 F.2d 301, 312 (2d Cir.1979), *cert. denied*, 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980). Because a court has the inherent power to alter its own prior rulings, the doctrine is merely "an expression of good sense and wise judicial practice." *Carpa, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1320 (5th Cir.1978), *overruled on other grounds, Copper Liquor Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir.1983); *see also Hughes Aircraft Company v. United States*, 86 F.3d

1566, 1578–79 (Fed.Cir.1996) (Bryson, J., concurring) ("courts apply the law-of-the-case doctrine except when the case for departure is exceptionally clear"); *Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d 1544, 1550 (Fed.Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988) (quoting Moore, et al., *Moore's Federal Practice* ¶ 0.404[1] at 118) (with regard to interlocutory decisions made at the trial level, "the law of the case doctrine is 'little more than a management practice to permit logical progression toward judgment.' ").

■ However, this case presents a specific and more binding variant of the law of the case doctrine—the so-called "mandate" rule. *See United States v. Connell*, 6 F.3d 27, 31 (1st Cir.1993) (referring to the mandate rule as the "kissing cousin" of the law of the case doctrine). This variant of the rule "ordinarily precludes a court from reexamining an issue previously decided by … a higher appellate court … in the same case." *United States v. Caterino*, 29 F.3d 1390, 1395 (9th Cir.1994) (citing *United States v. Maybusher*, 735 F.2d 366, 370 (9th Cir.1984), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985)); *see also Exxon Corp. v. United States*, 931 F.2d 874, 877 n. 4 (Fed. Cir.1991) (quoting Moore, et al., *Moore's Federal Practice* ¶ 0.404[1] at 118) ("after the law of the case is determined by a superior court, the inferior court lacks authority to depart from it, and any change must be made by the superior court that established it"); *Stark v. Advanced Magnetics, Inc.*, 894 F.Supp. 555, 557–58 (D.Mass.1995) ("the mandate rule, a specific application of the law of the case doctrine, *requires* this Court to comply with the command of an appellate court on remand."). While the mandate is not controlling as to issues not "within its compass," it controls the resolution of issues "decided either expressly or by necessary implication[.]" *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979) and *Conway v. Chemical Leaman Tank Lines*, 644 F.2d 1059, 1062 (5th Cir.1981). Furthermore, an issue or factual argument waived at the trial level before a particular order is appealed, or subsequently waived on appeal, cannot be re-

vived on remand. In essence, the party's waiver becomes the law of the case. *See Williamsburg Wax Museum v. Historic Figures, Inc.,* 810 F.2d 243, 250 (D.C.Cir.1987) ("[u]nder the law of the case doctrine, a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."); *Thyssen Steel Company v. M/V Kavo Yerakas,* 911 F.Supp. 263, 267–68 (S.D.Tex.1996) (because party did not raise issue before summary judgment was granted by district court, and then did not raise it on appeal, party's waiver of the issue was law of the case after remand); Wright, et al., *Federal Practice and Procedure* § 4478 at 801.

 Nevertheless, the mandate rule does not necessarily operate as a complete "straightjacket" on the district court on remand. *Connell,* 6 F.3d at 31. District

courts can generally deviate from the mandate if one of the same "exceptional" circumstances discussed above applies: (1) an intervening change in the law; (2) new and substantially different evidence is presented subsequent to the appeal; or (3) when the prior decision "was clearly erroneous and would work a manifest injustice if implemented." *Leggett v. Badger,* 798 F.2d 1387, 1389 (11th Cir.1986); *see also United States v. Bell,* 988 F.2d 247, 251 & n. 2 (1st Cir. 1993) (stating that the mandate rule is "subject to an occasional exception in the interests of justice"); *Cameo Convalescent Center v. Percy,* 800 F.2d 108, 110 (7th Cir.1986) (district court correct to deviate from mandate in light of recent, dispositive United States Supreme Court decision).[2] Regardless, however, a district court on remand must construe these exceptions extremely narrowly and may deviate from the mandate in only extraordinary situations. *Leggett,* 798 F.2d at 1389 n. 2.[3]

---

**2.** Plaintiff argues that in the Federal Circuit, the mandate rule is not subject to the exceptions discussed above. *See* Plaintiff's Opposition at 8–9 (citing *Northern Helex Company v. United States,* 225 Ct.Cl. 194, 634 F.2d 557, 560 (1980)). The Court disagrees. Simply put, the *Northern Helex* did not reach the questions of whether a district court could stray from the mandate if new, substantially different evidence was presented or there had been an intervening change in the controlling law. Accordingly, *Northern Helex* does not preclude the existence of such exceptions. Because Defendants have not argued that the maintenance of the validity finding would be "clearly erroneous" and work a "manifest injustice," the Court need not reach the question of whether *Northern Helex* precludes the application of the third traditional exception to the law of the case doctrine.

**3.** In their motion, Defendants argue that because the Court's validity finding and the Federal Circuit's subsequent affirmance involved an interlocutory order, the strict mandate rule does not apply. Defendants' Motion at 16–19 (citing *Mendenhall,* 26 F.3d at 1581). The Court finds Defendants' position curious and without any foundation in the law. In *Mendenhall,* the Federal Circuit found that, under the principles of *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), another court's prior final judgment that the plaintiff's patent was invalid collaterally estopped the *Mendenhall* court from upholding a district court's ruling that the patent was valid. The Federal Circuit held that because

the district court's validity finding was interlocutory, it was not a final judgment immune from the other court's invalidity finding. The court further held that the ability of a losing party to appeal the interlocutory ruling of validity under 28 U.S.C. § 1292(c)(2) did not convert the validity finding into a final judgment. *Mendenhall,* 26 F.3d at 1581 ("This provision for interlocutory appeal does not render a district court decision on fewer than all issues in the case a 'final' decision.").

Despite its holding that § 1292(c)(2) does not convert an interlocutory order into a final judgment, *Mendenhall* simply does not stand for the proposition that a Federal Circuit ruling affirming an interlocutory finding of validity produces no binding mandate. On the contrary, "[w]hen an interlocutory appeal is taken, the mandate of the court of appeals governs the proceedings in the district court in the same fashion that it would on an appeal taken from a final judgment." 1B Moore, et al., *Moore's Federal Practice* ¶ 0.404; *see Howe v. Varity Corp.,* 36 F.3d 746, 752 (8th Cir.1994), *aff'd,* —— U.S. ——, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Erkins v. Bryan,* 785 F.2d 1538, 1542 (11th Cir.), *cert. denied,* 479 U.S. 960, 107 S.Ct. 455, 93 L.Ed.2d 402 (1986).

Were it otherwise, all Federal Circuit rulings on § 1292(c)(2) interlocutory appeals would be merely advisory opinions, obeyed at the discretion of the district court, subject only to the loose confines of the law of the case doctrine. Such a rule would corrode the efficacy and frustrate the purpose of interlocutory appeals under

In this case, the Court upheld the validity of Plaintiff's '711 Patent. During the briefing concerning the summary judgment motions, Defendants never raised the issue of whether the '711 Patent was valid in light of the Tanaka or Miyake Patents.[4] In seeking to challenge the validity of Plaintiff's patent, Defendants had the burden of marshalling all evidence probative of the validity of the '711 Patent. Thus, at the time of the summary judgment motion, Defendants had the burden of finding the Tanaka and Miyake Patents, and then bringing them to the attention of the Court. Because the Court was not limited to the record before the PTO, the Court could have considered the Tanaka and Miyake Patents at the time it considered the summary judgment motions. However, Defendants failed to raise the issue.

Accordingly, Defendants have waived the issue of whether the '711 Patent is invalid in light of the Tanaka and Miyake Patents. Further, because the Court's validity finding was affirmed by the Federal Circuit on appeal, this waiver is now the law of the case and part of the Federal Circuit's mandate. *Thyssen,* 911 F.Supp. at 267–68. In seeking to amend its counterclaims and affirmative defenses to again challenge the validity of the '711 Patent, Defendants essentially assert that the Court should deviate from the mandate in light of new evidence.

But the Tanaka and Miyake Patents hardly constitute "new" evidence. Indeed, both patents are over 15 years old. In seeking to challenge the validity of the '711 Patent, Defendants could, with due diligence, have found these patents and brought them to the attention of the Court at the time of the summary judgment motion. Indeed, Defendants do not even argue that, in the exercise of due diligence, these prior art patents could not have been discovered. Thus, rather than being "new" evidence, the Tanaka and Miyake Patents are more akin to "belated" evidence. *Johns–Manville,* 116 F.R.D. at 105.

Therefore, the "exceptional" grounds required for deviating from the Federal Circuit's mandate affirming the validity of the '711 Patent are not present here. On the basis of the "belated" evidence presented by Defendants, the Court cannot revisit its prior finding (affirmed on appeal) of validity. Accordingly, any amendment to the Counterclaims or Affirmative Defenses raising the issue of invalidity in light of the Tanaka and Miyake Patents is clearly futile.

Thus, Defendants' motion to add its third and fourth affirmative defenses and first and second counterclaims (concerning the invalidity of the '711 Patent) must be denied.

### 2. Second Affirmative Defense and Fifth Counterclaim Re: Non-infringement on the Grounds of Separate Patentability.

In the June 13, 1994 Order, the Court found that Defendants had infringed Plaintiff's patent. The Federal Circuit also affirmed this ruling. Nevertheless, even if the Federal Circuit's decision constitutes the mandate of this case, Defendants claim that

§ 1292(c)(2) (and interlocutory appeals generally). Section 1292(c)(2) was enacted in an effort to avoid the waste of proceeding to an accounting, and then having the liability and validity orders overturned on appeal, thus rendering the accounting finding moot. *See E.I. Du Pont de Nemours v. Phillips Petroleum,* 720 F.Supp. 373, 386 (D.Del.1989). Defendants' proposed statement of the law would frustrate the intent of Congress in enacting § 1292(c)(2) because it would make a Federal Circuit decision affirming validity and liability continually reviewable and subject to question by the district court. Thankfully, this is not the law.

4. In the briefing concerning the summary judgment motion, Defendants argued that the '711 Patent was invalid for being anticipated by the Van den Bulke Patent. *See* Defendants' Motion for Summary Judgment at 26–31 (referring to the Van den Bulke Patent as the "French Reference"). In the summary judgment Order, the Court rejected this argument. *See* Order (dated June 13, 1994) at 20–21. To the extent that Defendants revive this argument, it is barred by the Court's prior Order. To the extent that Defendants contend that the '711 Patent is obvious over the Van den Bulke Patent, this argument has clearly been waived. Because the Federal Circuit affirmed the Court's June 13, 1994 summary judgment ruling, this waiver is now the law of this case and part of the Federal Circuit's mandate. With regard to the Van den Bulke Patent, the Court finds no grounds for deviating from the Federal Circuit's mandate. Thus, any amendment to assert arguments concerning the Van den Bulke Patent is clearly futile and must be denied.

**952**

intervening controlling authority warrants a reevaluation of this ruling. Defendants' Amended Answer at ¶ 21. Defendants contend that in *National Presto Industries, Inc. v. The West Bend Co.*, 76 F.3d 1185, 1189 (Fed.Cir.1996), the Federal Circuit changed the law with regard to the relevance of separate patentability.

In *National Presto,* the Court stated that "the grant of a separate patent on the accused device does not automatically avoid infringement, either literal or by equivalency. Improvements or modifications may indeed be separately patentable if the requirements of patentability are met, yet the device may or may not avoid infringement of the prior patent." *National Presto,* 76 F.3d at 1191. Defendants claim that this formulation of the law is different than that stated in *Atlas Powder Co. v. E.I. DuPont de Nemours & Co.*, 750 F.2d 1569 (Fed.Cir.1984). However, *Atlas* does not hold that separate patentability is irrelevant to the infringement inquiry, in direct contrast to *National Presto.* Indeed, that question was not reached by the *Atlas* Court.[5] *Atlas* merely held that the fact of separate patentability does not, in and of itself, negate a finding of infringement. *Atlas,* 750 F.2d at 1580–81.

 Further, even if there has been a change in the law (which there has not been), this change happened well before *National Presto,* and well before the Court's June 1994 Order. In *Hoganas AB v. Dresser Ind., Inc.,* 9 F.3d 948 (Fed.Cir.1993), the Federal Circuit expressly stated that the fact of separate patentability *was* relevant, at least as to equivalency (the specific issue determined in *National Presto* ). *See Hoganas,* 9 F.3d at 954. In the briefing concerning the summary judgment motions (occurring after both *Atlas* and *Hoganas* ), neither party raised the issue of separate patentability. Accordingly, the Court did not consider it in making its ruling that Defendants infringed Plaintiff's patent. Thus, Defendants waived this issue. This waiver is now the law of the case on remand and binding upon this Court. *Thyssen,* 911 F.Supp. at 267–68.

Because there has been no intervening change in the law since the Federal Circuit's affirmance of the Court's June 1994 Order, the Court cannot reopen the question of whether Defendants have infringed the '711 patent. Thus, any amendment concerning non-infringement would be futile.

Accordingly, Defendants' request to add the second affirmative defense and fifth counterclaim (concerning non-infringement of the '711 Patent) must be denied.

**3. Third Counterclaim and Fourth Counterclaim Re: Plaintiff's Infringement of Defendants Patents.**

 Defendants also seek to add two counterclaims asserting that Plaintiff has infringed Defendants' own '692 and '072 Patents. Clearly, these are permissive counterclaims. Accordingly, the Court does have the discretion under Federal Rule 13(e) to allow Defendants to add them to the action. Moreover, because they are not governed by the Federal Circuit's mandate, there is nothing to indicate that the amendment is futile.

However, allowing Defendants to add these counterclaims would entirely change the focus of this case and, potentially, prejudice the Plaintiff. As discussed above, the validity and liability issues concerning the '711 Patent are complete, and all that is left is an accounting. Adding the counterclaims concerning Defendants' '692 and '072 Patents would inject a completely new case into the body of an old matter that is winding down. Because much new discovery would be required, the new counterclaims would greatly prolong this litigation and surely delay any recovery by Plaintiff for Defendants' infringement of the '711 Patent.

Moreover, even if the Court were to allow Defendants to add these counterclaims, the Court certainly would not allow the accounting issues concerning the '711 Patent and the infringement issues concerning Defendants' Patents to go to the jury together. Because of the high risk of jury confusion, the Court would likely sever the actions well before trial.

**5.** Moreover, the *National Presto* opinion even cited to *Atlas.*

Accordingly, the Court must deny Defendants' attempt to add its proposed third and fourth counterclaims regarding Plaintiff's alleged infringement of the '692 and '072 Patents. This ruling causes no prejudice to Defendants, for they can simply bring their new infringement allegations against Plaintiff in a separate action.

### 4. Fifth Affirmative Defense, Sixth Affirmative Defense, and Sixth Counterclaim Re: Unclean Hands.

 Defendants also allege that in light of Plaintiff's own willful infringement of Defendants' patents, Plaintiff has "unclean hands" and is either equitably estopped or cannot otherwise enforce the ruling that Defendants have infringed upon Plaintiff's '711 Patent. Defendants' Amended Answer at ¶ 29, ¶ 34. In other words, Defendants assert that Plaintiff has no right to bring a claim of infringement in a court of equity when Plaintiff has itself infringed upon Defendants' patents. Plaintiff contends that, in this situation, "unclean hands" is a "bogus" defense. Plaintiff's Opposition at 21.

The Court agrees. The doctrine of unclean hands stems from the equitable maxim that "he who comes into equity must come with clean hands." *Pursche v. Atlas Scraper and Engineering Co.*, 300 F.2d 467, 486 (9th Cir.1961), *cert. denied*, 371 U.S. 911, 83 S.Ct. 251, 9 L.Ed.2d 170 (1962). Clearly, the doctrine of unclean hands is broadly construed, and has been applied in patent cases. *See Precision Instrument Mfg. Co., et al. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 815, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945) (the doctrine "necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant."). Thus, courts have recognized or applied "unclean hands" or similar doctrines in cases involving fraud on the patent office or other inequitable conduct performed during the procurement of the specific patent-in-suit. *See, e.g., Precision Instrument*, 324 U.S. at 819, 65 S.Ct. at 999 ("The public policy against the assertion and enforcement of patents claims infected with fraud and perjury is too great to be overridden[.]"); *Merck & Co., Inc. v. Danbury Pharmacal,*

*Inc.*, 873 F.2d 1418 (Fed.Cir.1989) (affirming a district court's finding that the patent-in-suit was unenforceable due to inequitable conduct in dealings with the PTO); *KangaROOS U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1576 (Fed.Cir.1985) ("There is no reprieve from the duty of square dealing and full disclosure that rests on the patent practitioner in dealings with the PTO."); *Intel*, 692 F.Supp. at 1115–16 (recognizing that inequitable conduct in the procurement of a patent can render it unenforceable); 5 Donald S. Chisum, *Patents* § 19.03 (discussing the relevance of fraud and inequitable conduct).

Defendants do not assert that Plaintiff committed fraud or inequitable conduct in the procurement of the '711 Patent. Indeed, aside from that discussed above, there is no direct challenge to the essential validity or "cleanliness" of the '711 Patent. Rather, Defendants contend that because Plaintiff has behaved inequitably by willfully infringing Defendants' own patents, the '711 Patent should be rendered unenforceable by Plaintiff.

 The Court has seen *no* cases applying the unclean hands doctrine to Defendants' novel theory. This is not surprising, for it would be an unprecedented stretch of the doctrine. First, Plaintiff's alleged misconduct has no direct relationship to the '711 Patent or Plaintiff's conduct in obtaining the patent-in-suit. Although the "unclean hands" doctrine is broad, it does require a connection to "the matter in which [the plaintiff] seeks relief." *Precision Instrument*, 324 U.S. at 814, 65 S.Ct. at 997. Defendants' allegation of inequitable conduct has nothing to do with the validity of the '711 Patent or of Defendants' infringement of the '711 Patent—the "matters" at issue in this case.

Second, Defendants' theory makes little sense and is not grounded in law. In essence, Defendants have trespassed upon Plaintiff's property. For this, Plaintiff can sue for damages or an accounting. Conversely, if Plaintiff has trespassed upon Defendants' property, Defendants can sue Plaintiff for damages or an accounting. One trespass does not cancel the other. Both trespasses can be remedied.

Accordingly, Defendants' motion to add the fifth and sixth affirmative defenses and the sixth counterclaim must be denied for futility.

### III. Conclusion

For all of these reasons, the Court hereby ORDERS that Defendants' motion for leave to file an amended answer and counterclaims is DENIED.

**SO ORDERED.**