Louis J. MARTINO and McDonald's Drive-In of Ottumwa, Iowa, Inc., Plaintiffs-Appellants,

v.

McDONALD'S SYSTEM, INC. and Franchise Realty Interstate Corporation, Defendants-Appellees.

No. 78–1480.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1978.

Decided May 9, 1979.

---

Judson H. Miner, Chicago, Ill., for plaintiffs-appellants.

Earl E. Pollock, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and PELL and WOOD, Circuit Judges.

PELL, Circuit Judge.

The plaintiffs, Louis J. Martino and McDonald's Drive-In of Ottumwa, Iowa, Inc., (McDonald's Ottumwa) appeal from the district court's entry of summary judgment against them on one count of their two count antitrust complaint against the defendants, McDonald's System, Inc. (McDonald's System) and Franchise Realty Interstate Corporation (FRIC). The only issue before this court is whether a 1973 consent judgment against Martino precludes the cause of action set forth in Count I of the present complaint. The district court held that both res judicata and the compulsory counterclaim rule of Fed.R. Civ.P. 13(a) barred the plaintiffs from suing on their first cause of action. *Martino v. McDonald's System, Inc.*, 432 F.Supp. 499 (N.D. Ill. 1977).

In 1962 the plaintiff Louis Martino and three brothers not involved in this action entered into a franchise and lease agreement with the defendants.[1] Martino and his brothers then organized McDonald's Ottumwa, the corporate plaintiff here, to operate the business. The contract to which Martino and the defendants were parties provided that neither Martino nor a member of his immediate family would acquire a

financial interest in a competing self-service food business without the written consent of McDonald's System and FRIC. In 1968 Martino's son purchased a Burger Chef franchise in Pittsburg, Kansas. Martino financed this transaction.

On the basis of this transaction FRIC and McDonald's System brought a federal diversity action in Iowa against Martino and his three brothers, charging that Martino had violated the contract provision restricting acquisitions described above. This lawsuit, commenced in 1972, ended in 1973 with a consent judgment to which the district court appended findings of fact and conclusions of law. The court order also provided that the parties had entered an agreement for the sale of McDonald's Ottumwa franchise to FRIC for $140,000. The sale was completed according to the terms of the agreement. Martino's brothers later cancelled their stock in McDonald's Ottumwa, leaving Martino as the sole shareholder.

Martino and McDonald's Ottumwa brought this action in 1975. Count I of their complaint alleges that the enforcement of the restriction on acquisition in the franchise and lease agreements violated Section 1 of the Sherman Act, 15 U.S.C. § 1. As a basis for damages, Martino claims profits he would have earned as owner of the McDonald's franchise. Both plaintiffs claim damages for having had to sell the franchise, allegedly below its market value.

The defendants have presented two theories for barring Count I of the plaintiffs' antitrust complaint. The first theory is based on the preclusive effect of Fed.R. Civ.P. 13(a), applying to compulsory counterclaims. The second theory is based on the principle of res judicata. We shall now consider the merits of each theory.

■ The defendants argue that the district court correctly held that Count I is precluded by Fed.R.Civ.P. 13(a).[2] Claims

1. The defendant McDonald's System, Inc. licensed the McDonald's franchise, and the defendant FRIC leased the property for the franchise.

2. Rule 13(a) provides in pertinent part:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require

coming within the definition of "compulsory counterclaim" are lost if not raised at the proper time. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974); *Fagnan v. Great Central Insurance Co.*, 577 F.2d 418 (7th Cir.), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 615, 58 L.Ed.2d 680 (1978). According to the defendants, Rule 13(a) required Martino to raise this antitrust challenge to the contract provision in the earlier suit based on the same provision. If Rule 13(a) were applicable to these facts, the defendants' argument might have merit.[3] Rule 13(a), however, by its own terms does not apply unless there has been some form of pleading.

The rule expressly says that "a *pleading* shall state as a counterclaim any claim which at the time of serving the *pleading* the *pleader* has against any opposing party . . . ." (Emphasis added). In the prior Iowa action at issue here, Martino filed no pleading as the word is defined in Fed.R. Civ.P. 7(a).[4] For this reason, Martino argues that we must not apply Rule 13(a) to the claim stated in Count I of his complaint. We agree.

■■ Rule 13(a) is in some ways a harsh rule. It forces parties to raise certain claims at the time and place chosen by their opponents, or to lose them. The rule, however, is the result of a balancing between competing interests. The convenience of the party with a compulsory counterclaim is sacrificed in the interest of judicial economy. *See Southern Construction Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962); *Dindo v. Whitney*, 451 F.2d 1, 3 (1st Cir. 1971). We do not believe that the drafters of Rule 13 chose the term "plead-

ing" unadvisedly. It no doubt marks, although somewhat arbitrarily, a point at which the judicial burden of the earlier lawsuit outweighs the opposing party's interest in bringing an action when and where it is most convenient. The earlier action between these parties was terminated by a consent judgment before the answer was filed. We see little sense in applying the broad bar established in Rule 13(a) to an action that ended with virtually no burden on the judicial calendar.

McDonald's System and FRIC emphasize, however, that the deadline for filing the answer in the earlier action had passed,[5] and that Rule 13(a) should therefore apply regardless of the absence of a responsive pleading. Citing as support several cases construing rules similar to Rule 13(a), *Brenner v. Mitchum, Jones & Templeton, Inc.*, 494 F.2d 881 (9th Cir. 1974) (California rule); *Mensing v. Sturgeon*, 250 Iowa 918, 97 N.W.2d 145, 149 (1959); *Keller v. Keklikian*, 362 Mo. 919, 244 S.W.2d 1001, 1004–05 (1951); *Friedrichsen v. Cobb*, 84 Mont. 238, 275 P. 267, 271 (1929); *McDonald v. Krause*, 77 Nev. 312, 362 P.2d 724, 729 (1961); *Harris v. Jones*, 404 S.W.2d 349, 351–52 (Tex. Civ.App.1966); *see also Firemen's Insurance Co. v. L. P. Steuart & Bros., Inc.*, 158 A.2d 675, 677 (D.C. Mun.App. 1960) (construing Fed.R.Civ.P. 13(a)), McDonald's System and FRIC argue that to hold otherwise is to reward noncompliance with the Federal Rules. We believe that this argument exaggerates the effect of not applying Rule 13(a). The Rules themselves provide for default judgments against a party for failure to plead, Fed.R.Civ.P. 55, and the effect of such a judgment as res judicata, *Morris v. Jones*, 329 U.S. 545, 550–51, 67 S.Ct. 451,

for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction . . . . .

**3.** Martino argues, however, the *Mercoid Corp. v. Mid-Continent Investment Co.*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944) requires special treatment of antitrust counterclaims. We consider this argument as it applies to the res judicata theory of preclusion, *infra*. Because we decline to apply Rule 13(a) in the circumstances of this case, we do not consider the merits of Martino's argument that *Mercoid* requires that all antitrust counterclaims be treat-

ed as permissive counterclaims under Fed.R. Civ.P. 13(b).

**4.** Rule 7(a) defines the following as pleadings: an answer, a reply to a counterclaim, an answer to a crossclaim, a third party complaint, and a third party answer.

**5.** Almost immediately after the complaint was filed, the parties entered into settlement negotiations. The resulting consent judgment was entered before Martino filed an answer.

91 L.Ed. 488 (1947); 1B Moore's Federal Practice ¶ 0.409[4] (2d ed. 1974), prevents the nonpleading party from profiting as the result of his noncompliance.[6] *See also* Restatement (Second) of Judgments § 56.1, Comment a (Tent. Draft No. 1, 1973).

Although Rule 13(a) does not dispose of Martino's antitrust claim, long-standing principles of res judicata establish a narrowly defined class of "common law compulsory counterclaims." *See* Restatement (Second) of Judgments § 56.1(2)(b), Reporter's Note on Comment f (Tent. Draft No. 1, 1973). We hold that the antitrust claim set forth in Count I of Martino's complaint falls within this narrow class of claims and that the res judicata effect of the earlier consent judgment is a bar to raising it now.

▮ The principle of res judicata at issue here treats a judgment on the merits as an absolute bar to relitigation between the parties and those in privity with them[7] of every matter offered and received to sustain or defeat the claim or demand and to every matter which might have been received for that purpose. *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 375, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876).

▮▮ The conclusion of the earlier contract lawsuit with a consent judgment does not prevent the earlier judgment from having a res judicata effect. *Beloit Culligan*

*Soft Water Service, Inc. v. Culligan, Inc.*, 274 F.2d 29, 35 (7th Cir. 1959); 1B Moore's Federal Practice ¶ 0.409[5], at 1026 (2d ed. 1974). *See Lawlor v. National Screen Service*, 349 U.S. 322, 327, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *United States v. Swift & Co.*, 286 U.S. 106, 115, 52 S.Ct. 460, 76 L.Ed. 999 (1932); *Brunswick Corp. v. Chrysler Corp.*, 287 F.Supp. 776, 777 (E.D. Wis. 1968). The plaintiffs argue that the former judgment has no res judicata effect because the parties did not sign mutual releases. We recognize that if a consent decree is expressly entered without prejudice or reserving rights the decree will not have a preclusive effect. *Brunswick Corp. v. Chrysler Corp., supra.* The mere absence of releases, however, is insufficient to indicate the unambiguous intent of the parties to counteract what would otherwise be the preclusive effect of the judgment. Although the earlier judgment at issue here was entered pursuant to the agreement of the parties, it was accompanied by judicial findings of fact and conclusions of law that go to the merits of the controversy. The court described Martino's actions as "a material breach of the agreements sufficient to justify termination."[8] The trial "court is not properly a recorder of contracts, but is an organ of government constituted to make judicial decisions and when it has rendered a consent judgment it has made an adjudication." 1B Moore's Federal Practice ¶ 0.409[5] at 1030 (2d ed. 1974).

▮ Having determined that the prior consent judgment is an adjudication on the

---

**6.** As indicated by our discussion of the res judicata effect of the consent judgment, see text *infra*, we do not imply that default judgments for failure to plead create, on the basis of res judicata, a bar to counterclaims co-extensive with that in 13(a). We merely demonstrate that the potential for abuse of the counterclaim rule is too small to justify reading the pleading requirement out of the rule.

**7.** Martino argues that even if the compulsory counterclaim rule of 13(a) were applicable to him, it would not apply to the corporate plaintiff, which was not a party to the prior action. Martino, however, correctly does not dispute that the corporate plaintiff here is in privity with Martino for purposes of applying res judicata. Because we hold that Martino and Mc-

Donald's Ottumwa are in privity for purposes of res judicata, all references to Martino in our discussion of the res judicata issue refer as well to the corporate plaintiff.

**8.** The court held that

the defendant, Louis J. Martino, or a member of his immediate family, has violated the terms of the sublease and the franchise agreement by engaging in a business in which food and beverages are dispensed other than the location covered by the agreements without the prior consent of Franchise Realty or McDonald's System, and that such action constitutes a material breach of agreement sufficient to justify termination.

merits, we conclude that this judgment precludes Count I of this antitrust action. As a predicate for our discussion of the res judicata effect of the prior judgment we turn to the basis of Martino's present antitrust claim.

The gravamen of Count I of Martino's antitrust complaint is the 1973 lawsuit. In paragraph 12 of Count I, the complaint describes the 1973 lawsuit seeking termination of the franchise. Paragraph 13 continues, describing the personal pressures on Martino to settle the suit.[9] Paragraph 15 alleges that

> By enforcing the provisions of the franchise agreement and the sub-lease that prohibited the acquisition of any financial interest in a non-McDonald's self service food and beverage establishment against plaintiffs, defendants discouraged competition and unreasonably restrained trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

Paragraph 16 concludes Count I, alleging that Martino lost profits he would have earned as owner of the McDonald's franchise and that Martino was forced to sell the franchise at below its market value.

It is impossible to interpret this count as anything but a direct challenge to the outcome of the 1973 lawsuit. The 1973 lawsuit concluded that termination was justified. The plaintiff now contends that termination was not justified, because the federal antitrust laws forbade it. If Martino's antitrust theory had merit, it would have been a defense in 1973, changing the outcome of the litigation. *Milsen Company v. Southland Corporation*, 454 F.2d 363 (7th Cir. 1971).

The well-settled rule for the purpose of determining the res judicata effect of a judgment is that a "cause of action" comprises defenses, such as the alleged antitrust violation here, that were or might have been raised. As the Supreme Court said long ago:

> [A judgment on the merits] is a finality as to the claim or demand in controversy, concluding parties, and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered on a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, *the subsequent allegation of their existence is of no consequence.*

*Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876) (emphasis added). *See Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 375, 60 S.Ct. 317, 84 L.Ed. 329 (1940); *Lambert v. Conrad*, 536 F.2d 1183, 1185 (7th Cir. 1976).

■■ Because the alleged antitrust violation constitutes a separate ground for recovery as well as a defense to the suit to terminate the franchise, however, Martino argues that Count I of this action constitutes a different "cause of action" for the purpose of res judicata and that the prior judgment does not preclude relitigation of the defendants' termination rights under the antitrust laws. For cases like this one, to which Rule 13(a) is inapplicable, Martino's argument correctly states the general rule. When facts form the basis of both a defense and a counterclaim, the defendant's failure to allege these facts as a defense or a counterclaim "does not preclude him from relying on those facts in an action subsequently brought by him against the plaintiff." Restatement (Second) of Judgments § 56.1(1), Comment b (Tent. Draft No. 1, 1973). *Virginia-Carolina Chemical Co. v. Kirven*, 215 U.S. 252, 30 S.Ct. 78, 54 L.Ed. 179 (1909); Scott, *Collateral Estoppel by*

---

**9.** The personal pressures were not attributable to the defendants but were in part from his brothers who owned other McDonald's franchises which they feared might be jeopardized by fighting the lawsuit and in part from the recent death of his wife.

*Judgment*, 56 Harv.L.Rev. 1, 27 (1942). The logic of this rule in circumstances not subject to Rule 13(a) is manifest. Should the earlier litigation end in its very first stage, no great burden on the courts results from permitting a counterclaim to be raised at a more convenient time and place. Notions of judicial economy give way to fairness. The defendant in the earlier action has his day in court when and where he sees fit.

The rule is not absolute, however. Both precedent and policy require that res judicata bar a counterclaim when its prosecution would nullify rights established by the prior action. Judicial economy is not the only basis for the doctrine of res judicata. Res judicata also preserves the integrity of judgments and protects those who rely on them. McDonald's System and FRIC have terminated and repurchased Martino's franchise in reliance on the trial court's 1973 judgment telling them they were justified in doing so. Now Martino seeks to impose significant financial liability on the defendants for these actions. We cannot hold that the counterclaim exception to the res judicata rule, based merely on notions of convenience, permits the plaintiff here to wage this direct attack on the rights established by the prior judgment.

A comparison between two Supreme Court decisions illustrates the rule and the exception to the rule we have discussed. In *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), a case similar in relevant respects to the one before us, the Supreme Court applied res judicata to preclude a claim. In *Chicot County* the Court held that a judgment effecting a plan of readjustment of indebtedness, resulting in a cancellation of certain bonds, precluded a subsequent suit on the same bonds. The subsequent suit on the bonds alleged the unconstitutionality of the 1934 Readjustment Act which was the basis of the prior action. Although the question of constitutionality in *Chicot County*, like the antitrust issue here, was not actually litigated in the earlier action, and although the suit to recover on the bonds, like the antitrust claim

here, was a different cause of action, the Supreme Court applied the principle of res judicata to bar the second action. The Court explained:

> As parties, these bondholders had full opportunity to present any objections to the proceeding . . . . . Apparently no question of validity was raised and the cause proceeded to decree on the assumption by all parties and the court itself that the statute was valid. . . . If the general principles governing the defense of *res judicata* are applicable, these bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it.

308 U.S. at 375, 60 S.Ct. at 319. The unfairness of subjecting the issuer of the bonds in *Chicot County* to inconsistent obligations was manifest, and res judicata precluded that result.

In contrast, in *Virginia-Carolina Chemical Co. v. Kirven*, 215 U.S. 252, 30 S.Ct. 78, 54 L.Ed.2d 179 (1909), a purchaser sued for damages to his crops caused by the defendant's fertilizer. The defendant chemical company argued that its earlier successful suit against the purchaser for the price was a bar to the present suit. The Supreme Court held that the purchaser was entitled to bring the action for damages, drawing a distinction between claims which is crucial to the result in this case. A claim for crop damage in the earlier action for the purchase price would merely have effected a set-off to the Chemical Company's recovery of the purchase price. The claim for crop damage "[did not] go to the validity of the [Chemical Company's] demand [for the price] in its inception . . . such as . . . forgery, want of consideration, or payment." 215 U.S. at 257, 30 S.Ct. at 80. Concluding that Martino's claim set forth in Count I of his complaint is a direct attack on the termination rights established in the earlier judgment, we hold that Martino is barred from raising that claim. *See also Miller v. Meinhard*, 462 F.2d 358 (5th Cir. 1972); Restatement (Second) of Judgments § 56.1, Reporter's Note on Comment b (Tent. Draft No. 1, 1973).

Finally, we add that the Supreme Court's decision in *Mercoid v. Mid-Continent Investment Co.*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), does not establish an exception to this rule of res judicata for antitrust claims. In *Mercoid* the Court refused to apply res judicata to bar not only a counterclaim, but a defense as well. In an earlier patent infringement action, the defendants would have had available to them a defense to the infringement claim based on the theory that the plaintiff's patent licensing agreement unlawfully expanded the patent monopoly to unpatentable products. In *Mercoid* the defendants raised this defense for the first time. The Court, however, refused to apply res judicata to bar the use of the defense because of the strong public policy "which has led this Court in the past to withhold aid from a patentee in suits for either direct or indirect infringement where the patent was being misused." 320 U.S. at 670, 64 S.Ct. at 273.

Similarly, the Court, citing the *Virginia-Carolina Chemical* decision we discussed above, permitted the *Mercoid* defendant to raise an antitrust counterclaim based on the same theory of patent misuse. The Court's res judicata analysis in *Mercoid*, based on an examination of the policies involved, was no different than ours here.[10] In contrast, however, the Court in *Mercoid* added an additional, decisive consideration to the res judicata balance: the public policy requiring proper restriction of patent monopolies.[11] Because Martino's antitrust action has not been brought as a response to a patent infringement action, nor, here is there a similar policy factor, *Mercoid* does

not prevent the application of res judicata principles. Nothing in *Mercoid* justifies Martino's argument that *Mercoid* generally prohibits application of res judicata to antitrust claims. See *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *United States v. Eastport Steamship Corp.*, 255 F.2d 795, 805 (2d Cir. 1958); *Switzer Bros. v. Locklin*, 207 F.2d 483, 488 (7th Cir.), *cert. denied*, 347 U.S. 912, 74 S.Ct. 477, 98 L.Ed. 1069 (1953).

Accordingly, the judgment of the district court is affirmed.

Affirmed.

---

10. As we have already noted, see note 3 *supra*, we express no view on the merits of the plaintiffs' argument that *Mercoid* classifies all antitrust claims as permissive counterclaims under Rule 13(b).

11. We note that Justices Roberts, Reed, Frankfurter, and Jackson disagreed with the majority's balancing of the competing policies:

> I fail to see what great question of public interest or public policy is violated by holding that one to whom a defense was available, in rebuttal of a claim broader than was warranted by the statute on which the plaintiff's right was founded, is bound by the judgment

rendered. . . . We are now told that a misconstruction of the patent law by a licensor is so violent and flagrant a flouting of the public interest that a court of equity must hold its hand for the benefit of a defendant whenever he chooses to invoke that interest for his private benefit, though he has failed to make the defense in an earlier litigation and stands of record an infringer. If a wrong against the public has been perpetrated it may be redressed at the instance of the representatives of government. 320 U.S. at 675, 64 S.Ct. at 276. (Roberts, J., joined by Reed, Frankfurter, and Jackson, JJ., dissenting.)