Everett L. ANDREWS and Hub City Construction Company, Inc., Appellants,

v.

WADE & DE YOUNG, INC., P.C., Appellee.

No. S–7272.

Supreme Court of Alaska.

Dec. 26, 1997.

Thomas R. Wickwire, Fairbanks, for Appellants.

Thomas L. Melaney, Anchorage, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

Everett L. Andrews and Hub City Construction Co., Inc.[1] (collectively referred to as "Hub City") sued Wade & De Young, Inc., P.C., a law firm, for malpractice. The superior court dismissed the action and Hub City appealed. This court reversed the dismissal and remanded the case. *See Andrews v. Wade & De Young, Inc., P.C.*, 875 P.2d 89, 93 (Alaska 1994). On remand, the superior court granted summary judgment to Wade & De Young on res judicata grounds. Hub City now appeals, asserting that the superior court failed to follow this court's instructions.

## I. BACKGROUND

The facts of this case are recounted in *Andrews* and will be merely summarized here. *See Andrews*, 875 P.2d at 90. Wade & De Young represented Moneymaker/Hub City Construction, a joint venture, in litigation with the Alaska State Housing Authority (ASHA). After that litigation settled, Hub City refused to authorize payments to Wade & De Young for attorney's fees. Wade & De Young brought suit in superior court seeking payment of its attorney's fees. Hub City answered on May 3, 1990. The joint venture then petitioned to have the dispute heard by the Alaska Bar Association's Fee Arbitration Panel. The Fee Arbitration Panel concluded that Wade & De Young was entitled to approximately $471,000 for its services. Wade & De Young subsequently filed a motion seeking confirmation of the award, which the superior court granted on July 2, 1991.

Following confirmation of the award, Hub City filed an action in superior court containing six separate counts for legal malpractice against Wade & De Young based upon the firm's representation of the joint venture in its litigation with ASHA. The superior court dismissed the action "on *res judicata* grounds." *Andrews*, 875 P.2d at 90. We reversed the dismissal and remanded the case because the superior court "failed to

state affirmatively that it was considering matters outside of the pleadings, thus converting Wade & De Young's Civil Rule 12(b)(6) motion to one for summary judgment." *Id.* at 91.

We noted that Civil Rule 13(a) "would preclude Hub City's legal malpractice action if the claim existed at the time Hub City served its answer in the fee recovery action." *Id.* Because the superior court's ruling prevented Hub City from presenting evidence concerning the date it first learned of its malpractice claims, we remanded the case to the superior court. *Id.* at 92–93.

On remand, the superior court granted summary judgment to Wade & De Young, holding that res judicata barred Hub City from pursuing its malpractice claims. As to most claims, the superior court determined that Hub City was aware of its malpractice claims no later than the date the fee arbitration award was confirmed. Hub City appeals, arguing that pursuant to this court's opinion, the superior court should have looked to the date it served its answer, rather than the date of the confirmation to determine whether its malpractice claims were barred.

## II. STANDARD OF REVIEW

This court will affirm the superior court's grant of summary judgment if the evidence in the record presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See French v. Jadon, Inc.*, 911 P.2d 20, 23–24 (Alaska 1996). The moving party bears the burden of demonstrating that there is no dispute as to any issue of material fact. *See Wassink v. Hawkins*, 763 P.2d 971, 973 (Alaska 1988). All reasonable inferences of fact are drawn in favor of the nonmoving party. *See Wright v. State*, 824 P.2d 718, 720 (Alaska 1992).

## III. THE REMAND

On remand, the superior court heard evidence relating to the date Hub City learned of the facts constituting the basis for its malpractice claims. However, the superior

---

**1.** Andrews is president and owner of the stock of Hub City Construction Co., Inc.

court concluded that the relevant date for determining whether Hub City's malpractice claims were barred was the date the fee arbitration award was confirmed, rather than the (much earlier) date Hub City filed its answer.[2]

The superior court explained its choice of relevant date for determining whether Hub City's malpractice claims were barred as follows:

> The confusion may arise, because the supreme court did not differentiate between compulsory counterclaim and res judicata analyses. Clearly, Rule 13(a) is implicated at a specific point in time: when a pleading is filed. On the other hand, the case law which gives rise to res judicata principles does not specify a particular moment or event in the litigation process when the claim must be made, or lost.
>
> This court finds that, as a *general* matter, the better policy is to require that a defendant raise claims subject to a res judicata defense *whenever*, in the course of the same transaction litigation, those claims come to light. *See Jackinsky v. Jackinsky*, 894 P.2d 650 (Alaska 1995); *Tolstrup v. Miller*, 726 P.2d 1304 (Alaska 1986). Presumably there would be exceptions to this rule, times when such claims became known too late. Thus, res judicata might not apply when knowledge first arises in the course of trial, or possibly any time after discovery has closed.... But exceptions such as these have not been presented in this case.

## IV. *DISCUSSION*

■ Alaska Rule of Civil Procedure 13(a) provides: "A pleading shall state as a. counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." Although it is not specifically stated in the Rule, it is well established that "[f]ailure to assert a compulsory counterclaim bars a party from bringing a later independent action on that claim." *Andrews*, 875 P.2d at 91 (citing *Miller v. LHKM*, 751 P.2d 1356, 1359 (Alaska 1988); *Wells v. Noey*, 399 P.2d 217, 220 (Alaska 1965)).

■ We concluded in the earlier appeal that Hub City's malpractice claims arise from the same transaction and occurrence that was the subject of the earlier attorney's fee recovery litigation. *Andrews*, 875 P.2d at 91. However, under Civil Rule 13(a), a claim is not compulsory if it is not mature at the time the party serves its pleading. *Id.*[3] In this regard Civil Rule 13(e) provides:

> A claim which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading.

"Rule 13(e) is permissive, not mandatory." *Providence Washington Ins. Co. v. McGee*, 764 P.2d 712, 715 n. 9 (Alaska 1988). According to Wright, Miller and Kane:

> An after-acquired claim, even if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, need not be pleaded supplementally; the after-acquired claim is not considered a compulsory counterclaim under Rule 13(a) and a failure to interpose it will not bar its assertion in a later suit.

6 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 1428, at 209 (2d ed.1990).

---

**2.** Hub City served its answer in the fee litigation on May 3, 1990. The superior court confirmed the Fee Arbitration Panel's award on July 2, 1991.

In its order granting summary judgment to Wade & De Young the superior court stated: Examination of Hub City's claims reveals that plaintiff was aware of the grounds for each of the six counts in its complaint at the latest, before the fee arbitration award was confirmed.

**3.** As we noted in the earlier appeal of this case, "[a] cause of action for attorney malpractice does not mature until 'the client discovers or reasonably should have discovered the existence of all of the elements of his cause of action.'" *Andrews v. Wade & De Young, Inc., P.C.*, 875 P.2d 89, 91 (Alaska 1994) (citing *Wettanen v. Cowper*, 749 P.2d 362, 364 (Alaska 1988)). Hub City maintains that it learned of the facts which form the basis of its malpractice claims during the course of the attorney's fee recovery litigation— after it served its answer in that case.

A number of state and federal courts have held that an after-acquired counterclaim is not barred either by the doctrine of claim preclusion or by rules of civil procedure analogous to Civil Rule 13(a). *See, e.g., Dillard v. Security Pac. Brokers, Inc.,* 835 F.2d 607, 609 (5th Cir.1988); *Johnson v. Con–Vey/Keystone, Inc.,* 856 F.Supp. 1443, 1450–51 (D.Or. 1994); *Law Offices of Jerris Leonard, P.C. v. Mideast Systems, Ltd.,* 111 F.R.D. 359, 362 (D.D.C.1986) (all applying analogous rules of civil procedure).[4]

█ Given Hub City's contention that its malpractice claims against Wade & De Young did not mature until after it had filed its answer in the Wade & De Young suit for attorney's fees, its malpractice claims normally would be characterized as permissive counterclaims. They would thus not be barred by either the res judicata doctrine of claim preclusion or by the preclusive effect accorded to rules of civil procedure analogous to Civil Rule 13(a) and (e). Yet there appears to be some support for the superior court's policy rationale that an after-acquired claim which is not barred as a compulsory counterclaim may nonetheless be barred under res judicata principles if successful prosecution could nullify the earlier judgment.

Wright, Miller and Cooper note that

4. State court precedent is to the same effect. *See, e.g., Skillman v. First State Bank of Altoona,* 341 So.2d 691 (Ala.1977) (holding that wrongful garnishment claim was not barred as a compulsory counterclaim to an earlier action by bank to collect on a note because the wrongful garnishment arose after the time for Skillman to answer in the earlier action); *O'Brien v. Scottsdale Discount Corp.,* 14 Ariz.App. 224, 482 P.2d 473 (1971) (finding that trial court erred in holding that claims were compulsory in a previous action and were barred by res judicata where the trial court did not adduce whether the claims had matured before the time O'Brien answered the prior action).
   Wright, Miller and Cooper state:
   Failure to assert a counterclaim that is made compulsory by Rule 13(a) precludes a later action, whether the preclusion be explained on grounds of res judicata or on the potentially more flexible grounds of waiver, estoppel, or preclusion by rule. Failure to advance a merely premissive counterclaim, on the other hand, ordinarily does not preclude a later action. Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4414,

Federal courts have in fact supplemented Rule 13(a) with additional defendant preclusion rules. The clearest need for these rules is shown by cases that have involved a variety of direct attacks on the original judgment based on defenses or claims that could have been advanced in the first action. The rules have extended somewhat beyond the most palpable direct attacks, however, in an effort to protect the repose established by the original judgment against effective destruction in a later action by the former defendant. No clear formula has yet been found to capture this basic purpose, but the principle is well established.

Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4414, at 110–11 (1981).[5]

The legal foundation for the federal courts' adoption of supplemental rules of preclusion (in addition to rules of preclusion flowing from Rule 13(a)) is articulated in the Restatement (Second) of Judgments § 22 (1982), which provides:

> (1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).

at 109 (1981) (footnotes omitted). *See also* 18 James W. Moore, *Moore's Federal Practice* § 131.21[3][c][ii] at 131–47 (3d ed.1997).

5. The authors further observe that
> Despite the express provisions of Rule 13, a variety of cases have arisen that show the need for additional rules of defendant preclusion. The need arises in part from various exceptions to the basic requirement of advancing counterclaims that grow out of the same transaction or occurrence as the plaintiff's claim. Rule 13(a), for example, does not require assertion of counterclaims that already are subjects of a pending action, yet circumstances may arise in which pursuit of the pending action should be precluded after judgment in the later-instituted action. So too, the compulsion of Rule 13(a) has often been held inapplicable to actions terminated without a responsive pleading, as upon default, settlement, or dismissal on motion.

Wright, Miller and Cooper, *Federal Practice and Procedure* § 4414, at 110 (footnote omitted).

(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.[6]

The Restatement Commentary illustrates the concepts embodied within Section 22(2)(b) by way of the following two examples:

9. A brings an action against B for failure to pay the contract price for goods sold and delivered and recovers judgment by default. After entry of final judgment and payment of the price, B brings an action against A to rescind the contract for mutual mistake, seeking restitution of the contract price and offering to return the goods. The action is precluded.

10. A brings an action against B to quiet title to certain real estate and obtains judgment by default. B then brings an action against A to quiet title to the same property, alleging that at the time of the first action, B had acquired title to the property by adverse possession. The action is precluded.

Restatement (Second) of Judgments § 22, at 190.[7]

Typical of these authorities which have adopted the Restatement's rule is *Martino v. McDonald's System, Inc.*, 598 F.2d 1079 (7th

---

**6.** Comment f to section 22(2)(b) is particularly relevant. In discussing the special circumstances under which failure to interpose counterclaim will operate as a bar, it is stated:

Normally, in the absence of a compulsory counterclaim statute or rule of court, the defendant has a choice as to whether or not he will pursue his counterclaim in the action brought against him by the plaintiff. There are occasions, however, when allowance of a subsequent action would so plainly operate to undermine the initial judgment that the principle of finality requires preclusion of such an action. This need is recognized in Subsection (2)(b).

For such an occasion to arise, it is not sufficient that the counterclaim grow out of the same transaction or occurrence as the plaintiff's claim, nor is it sufficient that the facts constituting a defense also form the basis of the counterclaim. The counterclaim must be such that its successful prosecution in a subsequent action would nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment, or to recover on a restitution theory the amount paid pursuant to the judgment, or by depriving the plaintiff in the first action of property rights vested in him under the first judgment.

Restatement (Second) of Judgments § 22, Comment f, at 189–90 (internal cross-references omitted).

**7.** The Reporter's note to Comment f and Illustrations 9 and 10 reads:

Yet there do appear to be at least two situations where the need for such a common-law rule is clear, and identification of those situations may afford guidance in more difficult cases.

The first such situation, reflected in Illustration 9, is a case in which a defendant, having failed to interpose a defense or counterclaim in a prior action which terminated in a judgment for plaintiff, now seeks in a subsequent action to obtain relief which, if granted, would permit recovery of the amount paid pursuant to that judgment on a restitution theory. To allow such recovery (or to allow an injunction against enforcement before payment of the judgment) would be to allow an attack on the judgment itself. See the excellent discussion of a comparable but more complex fact situation in *Middlesex Concrete Products & Excavating Corp. v. Borough of Carteret*, 35 N.J.Super. 226, 113 A.2d 821 (1955); see also *Bank of Montreal v. Kough*, 612 F.2d 467 (9th Cir. 1980); *Martino v. McDonald's System, Inc.*, 598 F.2d 1079 (7th Cir.1979), cert. denied, 444 U.S. 966, 100 S.Ct. 455, 62 L.Ed.2d 379 (1979); *Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.*, 470 F.Supp. 610 (S.D.N.Y.1979)....

The second situation is one in which the initial judgment has resulted in a declaration of the plaintiff's interest in certain property and the defendant, as plaintiff in the subsequent action, seeks relief which, if granted, would significantly impair that interest. This situation is exemplified by Illustration 10, and the result posited there is supported by such decisions as *Moore v. Harjo*, 144 F.2d 318 (10th Cir.1944); *Lynch v. Lynch*, 250 Iowa 407, 94 N.W.2d 105 (1959); *Weiser v. Kling*, 38 App.Div. 266, 57 N.Y.S. 48 (1899) (alternative holding); *Paulson v. Oregon Surety & Cas. Co.*, 70 Or. 175, 138 P. 838 (1914).

Restatement (Second) of Judgments § 22, at 193–94.

Cir.1979). There the court applied the Restatement's rule in holding that plaintiff's claim was barred. McDonald's sued Martino for breach of contract. *Id.* at 1081. Before Martino filed an answer, he and McDonald's reached a settlement and the court entered a consent judgment against Martino. *Id.* Subsequently, Martino brought an antitrust action against McDonald's. *Id.* Rule 13(a) did not bar this subsequent action because Martino had never filed a pleading in the previous action. *Id.* at 1082. The *Martino* court, however, relied on the Restatement (Second) of Judgments to hold that Martino's claim was barred as a direct attack on the rights established in the earlier judgment.[8] *Id.* at 1085.

Whether or not this court should adopt the common law compulsory counterclaim rule of Section 22(2)(b) presents a debatable question. This is particularly so in light of this court's adoption of Civil Rule 13(a) (compulsory counterclaims) and 13(e)(permissive counterclaims for those claims maturing or acquired after service of a responsive pleading). Nevertheless we have determined that we need not answer the question in the factual context of this case.[9]

As noted above, according to Comment (f) to Section 22 of the Restatement, for a counterclaim to be barred,

it is not sufficient that the counterclaim grow out of the same transaction ... as the plaintiff's claim, nor is it sufficient that the facts constituting a defense also form the basis of the counterclaim. The counterclaim must be such that its successful prosecution in a subsequent action would

nullify the judgment, for example, by allowing the defendant to enjoin enforcement of the judgment....

Restatement (Second) of Judgments § 22, Comment f at 189.

A subsequent successfully prosecuted malpractice action would not alter rights to damages awarded in an attorney's fee litigation dispute, and would not necessarily entitle the client to restitution. It is conceivable that the attorney's malpractice caused less injury to the client than the cost of the services rendered. In such a situation, the attorney would be able to offset the award by any amount still owed under the original judgment, but the subsequent judgment would not nullify the first judgment.

*Rowland v. Harrison*, 320 Md. 223, 577 A.2d 51, 57 (1990) is a case on point. There the court found that plaintiff's action for malpractice against a veterinarian was not barred by the veterinarian's earlier action to recover a debt for treatment of plaintiff's horse. The court pointed to Illustration 2 to Section 22. This illustration indicates that a plaintiff's malpractice action against a doctor would not be barred by a default judgment against the plaintiff in the doctor's earlier action to collect fees. The court concluded that if the client were successful in the malpractice action, "she would be entitled to whatever amount of damages are determined, but could not recover the fees paid for the treatment of the horse." *Id.* Likewise, Hub City, if successful, would be entitled to damages caused by Wade & De Young's malpractice, but would not be entitled to

---

**8.** The same rationale was applied in *Lee v. City of Peoria*, 685 F.2d 196 (7th Cir.1982). In *Lee*, plaintiff had been dismissed from the police force. *Id.* He claimed at his administrative hearing and later on appeal in state court, that his dismissal was racially motivated, but presented no evidence in support of this claim. The dismissal was upheld. *Id.* Lee then instituted a civil rights suit in federal district court. *Id.* The circuit court affirmed the district court decision holding that plaintiff's failure to raise the defense before the Board barred him from asserting a claim based on the same facts in a subsequent action. *Id.* at 199–202.

Rule 13(a) did not apply because Lee initiated the original proceeding by appealing the Board's decision in a state court proceeding, and as a

consequence was not subject to the compulsory counterclaim provisions of Rule 13(a).

**9.** The Reporter's note to Comment (f) reads as follows:

*Comment f* and Illustrations 9 and 10 are new. These materials, and Subsection (2)(b) itself, represent an effort to articulate the bases in precedent and policy for what might be termed a "common-law compulsory counterclaim rule." It is perhaps impossible to define the scope of this concept with precision and in any event the problem is one of decreasing importance with the growth of compulsory counterclaim statutes and rules of court.

Restatement (Second) of Judgments § 22, at 193.

restitution of the attorney's fees awarded in the earlier suit.

We therefore conclude that even if this court were to adopt the common law compulsory counterclaim rule of Section 22(2)(b) of the Restatement, the facts of this particular case do not come within the ambit of Section 22(2)(b). Although it is beyond dispute that the earlier attorney's fee litigation and the current malpractice action arise out of the same transaction, it appears that a judgment in Hub City's favor in the malpractice action would not nullify the judgment in the attorney's fee litigation.[10]

■ Given the foregoing, we hold that the superior court erred in relying on the date the fee arbitration award was confirmed, rather than the date Hub City served its answer in the attorney's fee recovery action, in determining whether Hub City's malpractice claims were barred. Wade & De Young nevertheless contend that even if this court concludes that the date Hub City served its answer controls, the superior court's grant of summary judgment can be affirmed without remand, because the record supports the conclusion that Hub City knew of all the elements of its claim for malpractice against Wade & De Young at that time. Reaching this conclusion, however, would entail augmenting the findings of the superior court. Of the six counts of malpractice that Hub City alleged, the superior court held that only Count IV was barred as a "compulsory counterclaim."[11] As to the remaining five counts the superior court never found that Hub City was, or should have been, aware of

the grounds for the remaining malpractice counts of as May 3, 1990, the date it served its answer in the attorney's fee recovery action. The superior court is the forum in which to resolve the fact-intensive inquiry which is necessitated by our holding that May 3, 1990, not July 2, 1991, is the relevant date. Thus we conclude that the superior court's grant of summary judgment as to the six counts of malpractice pled by Hub City was erroneous.

## V. CONCLUSION

The superior court's grant of summary judgment as to Counts I, II, III, IV, V and VI is REVERSED. The case is REMANDED for further proceedings consistent with this opinion.

FABE, J., not participating.

---

**10.** Of additional significance is the fact that in the first appeal of this action, we stated:

[t]he fee arbitration proceeding involved the amount the Joint Venture and Hub City owed Wade & De Young for legal services rendered in the *ASHA* litigation. The legal malpractice litigation involves whether Wade & De Young committed malpractice during the course of its representation of Hub City in the *ASHA* litigation. In its fee arbitration decision and award, the Fee Arbitration Panel made no findings regarding Wade & De Young's malpractice. Furthermore, Wade & De Young concede that the Fee Arbitration Panel lacks jurisdiction to adjudicate malpractice claims. Resolution of a fee dispute is different from adjudication of a malpractice claim. While preclusion could arise based upon an arbitrator's decision, the Fee Arbitration Panel's decision and award

does not bar Hub City's malpractice action, because the two proceedings implicate different legal and factual issues.

*Andrews,* 875 P.2d at 92–93 (footnote omitted). In our view, if Hub City was unable to present its malpractice claims in the earlier action, it would be manifestly unjust to deny it the opportunity to litigate those claims now.

**11.** The superior court's alternative holding that Count IV was barred by application of the compulsory counterclaim rule lacks record support. In moving for summary judgment Wade & De Young failed to demonstrate that Hub City was aware of all the elements of its Count IV claim for malpractice at the time it served its answer in the attorney's fee case.