2 P.3d 663

**PARADIGM INSURANCE COMPANY, a foreign insurance company, Defendant Counter claimant-Appellant,**

**v.**

**The LANGERMAN LAW OFFICES, P.A., a professional association, Plaintiff Counter defendant-Appellee.**

**No. 1 CA–CV 98–0509.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 31, 1999.

Review Granted May 23, 2000.

---

Jones, Skelton & Hochuli by Robert R. Berk and Eileen J. Dennis, Phoenix, Attorneys for Defendant/Counterclaimant–Appellant.

Junker Shiaras & Harrington, P.C. by Larry J. Cohen and Neil J. Harrington, Phoenix, Attorneys for Plaintiff/Counterdefendant–Appellee.

## OPINION

RYAN, Presiding Judge.

¶ 1 In this appeal, we must decide whether an attorney-client relationship can be created between an insurer and the attorney it hires to represent its insured. We hold that one can be created, and thus the insurer may sue the attorney for malpractice. We also hold that the insurer may not withhold payment of fees owed to the attorney pending resolution of its malpractice claim against that attorney.

## I. BACKGROUND

¶ 2 Paradigm Insurance Company hired The Langerman Law Offices ("Langerman") to represent its insured doctors.[1] Paradigm asserts that Langerman agreed that if Paradigm hired Langerman to defend its insureds, Langerman would not accept cases against other Paradigm insureds. Soon thereafter, Langerman began to represent Dr. Vanderwerf, a Paradigm insured, in a medical malpractice case. After Langerman had performed some legal work in the matter, Paradigm concluded that Langerman violated the alleged agreement not to take cases against Paradigm insureds, and hired

new counsel to handle the Vanderwerf matter.

¶ 3 The new attorney told Paradigm that the defense should be tendered to Samaritan Insurance Funding because Samaritan Insurance was likely the doctor's primary insurer. Langerman previously had told Paradigm that there was "no viable theory" against Samaritan Health Service, the doctor's employer. But when Paradigm tendered the defense to Samaritan Insurance, Samaritan Insurance argued that the tender was untimely. Paradigm believed that Langerman's actions caused the untimely tender. As a result, Paradigm alleged that costs it incurred in unnecessarily defending and indemnifying Dr. Vanderwerf should have instead been incurred by Samaritan Insurance.

¶ 4 Paradigm then refused to pay attorneys' fees billed by Langerman. Langerman sued Paradigm to collect the fees, and Paradigm counterclaimed for breach of contract, malpractice, breach of fiduciary duty, and breach of Langerman's ethical obligations to Paradigm. Both parties filed motions for summary judgment on various grounds.

¶ 5 The trial court granted summary judgment for Langerman on the malpractice claim, finding that there was no attorney-client relationship between Langerman and Paradigm. The trial court later granted summary judgment for Langerman on its claim for fees. Also, the trial court granted summary judgment in favor of Langerman on Paradigm's remaining counterclaims. Although the court found a question of fact regarding whether Langerman breached an oral promise not to take cases against Paradigm's insureds, the court granted Langerman's motion in limine to preclude Paradigm from presenting evidence of damages on this issue because Paradigm had failed to disclose such evidence to Langerman. The parties stipulated to entry of judgment in favor of Langerman.

¶ 6 Paradigm appealed, raising five issues. We need only discuss the following issues: whether Paradigm had an attorney-client re-

---

1. Because this is an appeal from a summary judgment, we must view the evidence in the light most favorable to the party against whom judgment was entered. *See Pioneer Annuity Life Ins.* *Co. v. Rich,* 179 Ariz. 462, 464, 880 P.2d 682, 684 (App.1994). Many of the facts are undisputed; when the evidence conflicts, any inferences are drawn in favor of Paradigm.

lationship with Langerman; whether Paradigm could bring a malpractice action against Langerman; and whether Paradigm could withhold payment of fees Langerman incurred pending resolution of Paradigm's malpractice claim against Langerman. We discuss these issues in turn below.

## II.  DISCUSSION

### A.  Standard of Review

¶ 7  "On appeal from a summary judgment we determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App. 1993). The party with the burden of proof for the claim or defense must respond to a motion for summary judgment by showing evidence creating a genuine issue of fact for each element of the claim in question. *See Orme School v. Reeves*, 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990). Summary judgment is appropriate where "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Id.* at 309, 802 P.2d at 1008. Thus, with respect to each claim, if Paradigm failed to present sufficient evidence to support any of the elements of the claim, such that reasonable persons could find in favor of Paradigm, then the trial court properly granted summary judgment.

### B.  Attorney–Client Relationship

¶ 8  Paradigm first argues that the trial court erred when it ruled that, absent an express agreement, an attorney hired by an insurance company has no attorney-client relationship with the company. We hold that, if there is no conflict, an attorney-client relationship can be created between an insurer hiring an attorney to represent its insured, despite the lack of an express agreement.

¶ 9  The trial court ruled that no attorney-client relationship existed between Paradigm and Langerman because of the absence of an

express agreement that Langerman would jointly represent Paradigm and Dr. Vanderwerf. To support its ruling the court cited *Parsons v. Continental National American Group*, 113 Ariz. 223, 550 P.2d 94 (1976), and *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 515, 747 P.2d 1214 (App.1986), *aff'd in part, vacated in part*, 155 Ariz. 519, 747 P.2d 1218 (1987). These cases, however, do not address the specific issue whether an attorney-client relationship can be created between an insurer and the attorney it hires to represent its insured. Instead, they stand for the proposition that an attorney hired to represent an insured owes a primary duty to the insured and may not provide adverse confidential information to the insurer to be used against the insured in a coverage dispute.

¶ 10  In *Parsons*, an attorney disclosed to the insurer confidential information he learned in the course of representing the insured, which indicated that the policy's intentional act exclusion applied and precluded coverage. The Arizona Supreme Court stated that an "attorney who represents an insured owes him 'undeviating and single allegiance' whether the attorney is compensated by the insurer or the insured." *Parsons*, 113 Ariz. at 227, 550 P.2d at 98. The court went on to hold that when an attorney hired by an insurance company "uses the confidential relationship" to obtain information detrimental to the insured, any policy defenses are waived and the company, as a matter of law, is estopped "from disclaiming liability under an exclusionary clause in the policy." *Id.* at 228, 550 P.2d at 99; *see also Lake Havasu Comm. Hosp., Inc. v. Arizona Title Ins.*, 141 Ariz. 363, 377, 687 P.2d 371, 385 (App.1984) *overruled on other grounds by Barmat*, 155 Ariz. at 517, 747 P.2d at 1216 (holding insurer estopped from denying that it would have paid the policy limits, because attorney for insured divulged confidential information to insurer).

¶ 11  While *Parsons* did not specifically address whether an attorney-client relationship can be created between an insurer and the attorney it hires to represent its insured, it seems to imply that such a relationship does exist. The court held that when a conflict

arises such that an attorney obtains information that could possibly be detrimental to the insured's interests, the attorney should inform the insurer that he or she can no longer represent the insurer. *See Parsons,* 113 Ariz. at 227, 550 P.2d at 98. This holding implies that the attorney did represent the insurer before the conflict arose; otherwise it would be unnecessary for the attorney to inform the insurer that its representation could not continue.

¶ 12 In *Barmat,* an attorney representing the Arizona Guaranty Fund ("Fund"), which took over the Barmats' defense when their insurer became insolvent, disclosed confidential information to the Fund. The attorney also gave the Fund advice contrary to the Barmats' best interests. When the Barmats sued the attorney, he claimed immunity from suit under a statute providing the Fund and its agents with immunity. This court held that "when the Fund retains an attorney to represent an insolvent company's insured in a claim against that insured, the attorney is the agent of the insured and not the agent of the Fund for purposes of the immunity statute." *Barmat,* 155 Ariz. at 518, 747 P.2d at 1217. Thus, the immunity statute did not protect the attorney from liability for malpractice.

¶ 13 Neither *Parsons* nor *Barmat* requires an "express agreement" for an attorney-client relationship to exist. Rather, they hold that if an attorney provides adverse confidential information to the insurer, the insurer may be estopped from denying coverage or the insured may sue the attorney for malpractice. Here, there is no allegation that Paradigm sought, or Langerman provided, confidential information adverse to Dr. Vanderwerf's interests. Therefore, *Parsons* and *Barmat* are inapplicable to the question of whether an attorney-client relationship can be created between an insurer and the attorney it hires to defend its insured.

¶ 14 While we find no Arizona cases on point, numerous other jurisdictions have addressed this issue. The majority rule is that, in the absence of a conflict, the attorney has two clients, the insurer and the insured. *See, e.g., Home Indem. Co. v. Lane Powell Moss and Miller,* 43 F.3d 1322, 1330–31 (9th Cir.

1995) ("In a typical insurer-insured relationship, where there is no reservation of rights, there is no actual conflict of interest that would preclude an attorney from representing both the insurer and insured."); *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986) ("A 'client' is the person or entity on whose behalf a lawyer acts. [The attorneys] were acting for the insurer as well as for the insured."); *Unigard Ins. Group v. O'Flaherty & Belgum,* 38 Cal.App.4th 1229, 45 Cal.Rptr.2d 565, 568–69 (1995) (holding when no actual or apparent conflict exists, the attorney has a dual attorney-client relationship with both the insurer and the insured); *Nandorf, Inc. v. CNA Ins. Cos.,* 134 Ill.App.3d 134, 88 Ill.Dec. 968, 479 N.E.2d 988, 991 (1985) ("The attorney hired by the insurance company to defend in an action against the insured owes fiduciary duties to two clients: the insurer and the insured."); *see also* Richard L. Neumeier, *Serving Two Masters: Problems Facing Insurance Defense Counsel and Some Proposed Solutions,* 77 Mass. L.Rev. 66, 69 (1992) ("the law firm is attorney for the insured as well as the insurer." (quoting *McCourt Co. v. FPC Properties, Inc.,* 386 Mass. 145, 434 N.E.2d 1234, 1235 (1982))).

¶ 15 On the other hand, a minority of jurisdictions hold that an attorney hired by an insurer to represent its insured has one client—the insured. *See, e.g., Continental Cas. Co. v. Pullman, Comley, Bradley & Reeves,* 929 F.2d 103 (2d Cir.1991); *In re A.H. Robins Co.,* 880 F.2d 709 (4th Cir.1989), *abrogated on other grounds by Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Point Pleasant Canoe Rental, Inc. v. Tinicum Township,* 110 F.R.D. 166 (E.D.Pa.1986); *Novella v. Hartford Accident and Indem. Co.,* 163 Conn. 552, 316 A.2d 394 (1972); *Jackson v. Trapier,* 42 Misc.2d 139, 247 N.Y.S.2d 315 (N.Y.Sup.Ct.1964). The premise of these cases appears to be that "[c]onflicts of interest are inherent in the relationship between insurers and insured." John K. Morris, *Conflicts of Interest in Defending Under Liability Insurance Policies: A Proposed Solution,* 1981 Utah L.Rev. 457, 459.

¶ 16 We believe that the majority rule is the better rule for three reasons. First, to hold that an insurer cannot maintain a malpractice action against an attorney it hired to represent its insured would immunize that attorney's malpractice. *See Atlanta Int'l Ins. Co. v. Bell,* 438 Mich. 512, 475 N.W.2d 294, 298 (1991) ("[D]efense counsel's immunity from suit by the insurer would place the loss for the attorney's misconduct on the insurer.").[2] Requiring an attorney "to adhere to basic norms of duty of care," serves the best interests of both insurer and the insured. *Id.* Second, our ethical rules do not absolutely prohibit an attorney from representing more than one client in a single matter. *See* Ethical Rule 1.7(b), Rules of Professional Conduct, Rule 42, Rules of the Arizona Supreme Court. In the insurance context, such an "arrangement is valid ... under the law of professional responsibility because that body of law permits a lawyer to take on a company and an insured as joint clients when the interests of the parties are not fundamentally antagonistic." Charles Silver, *Does Insurance Defense Counsel Represent the Company or the Insured?,* 72 Tex. L.Rev. 1583, 1614 (1994). Third, as long as the interests of the insured and the insurer overlap, one attorney representing both makes economic and practical sense. Most insureds are not familiar with litigation and would have difficulty distinguishing between a bad lawyer and an unavoidable bad outcome. *See id.* at 1597. In contrast, insurance companies are "repeat players in litigation. They see the same kinds of claims over and over. They form long-term relationships with lawyers that encourage lawyers to act responsively, cooperatively, and economically." *Id.* (footnotes omitted).

¶ 17 Therefore, we hold that absent an actual or apparent conflict of interest between the insurer and the insured, an attorney may represent both. We find support for this approach in two recent decisions of the California Court of Appeal. In *Unigard,*

the court held that "where the insurer hires counsel to defend its insured *and does not raise or reserve any coverage dispute, and where there is otherwise no actual or apparent conflict of interest between the insurer and the insured that would preclude an attorney from representing both,* the attorney has a dual attorney-client relationship with both insurer and insured." 45 Cal.Rptr.2d at 569. In *American Casualty Co. v. O'Flaherty,* 57 Cal.App.4th 1070, 67 Cal.Rptr.2d 539, 542 (1997), the court, following *Unigard,* concluded that "[b]arring a conflict ... it makes sense to allow an insurance carrier who has retained counsel to defend the interests of its insured ... to sue that attorney for malpractice."

¶ 18 A conflict is likely to occur "where coverage under the policy is disputed [or] where the claim against the insured is likely to result in a recovery in excess of the policy limits unless the insurer accepts a settlement offer within the policy limits." *Bogard v. Employers Cas. Co.,* 164 Cal. App.3d 602, 210 Cal.Rptr. 578, 583 (1985) (citations omitted). Obviously, if a conflict between the interests of the insured and the insurer exists, then "the attorney's primary loyalty must be to the insured it was retained to defend." *American Cas. Co.,* 67 Cal. Rptr.2d at 542–43; *see also Parsons,* 113 Ariz. at 227, 550 P.2d at 98. But if there is no conflict, we conclude that an insurer can also have an attorney-client relationship with the attorney it hires to represent its insured.

¶ 19 Here, Langerman presented no evidence of any coverage dispute or other conflict of interest between Dr. Vanderwerf and Paradigm. Regarding any potential coverage dispute, the only evidence presented showed that Paradigm asserted that other coverage might be primary, but no evidence suggests that Paradigm ever disputed that its policy provided coverage or stated that it would refuse to pay the claim.

---

2. Although the court in *Atlanta International* held that no attorney-client relationship exists between an insurer and the attorney it hires to represent its insured, a plurality of the court did allow the insurance company to bring a malpractice action against the attorney under an equitable subrogation theory. The court's holding that

no attorney-client relationship exists in this situation has been called an anomaly and a deviation from the majority view. *See* 3 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice,* § 28.3, at 492 (4th ed.1996); Neumeier, 77 Mass. L.Rev. at 69 & n. 26.

¶ 20 Langerman asserts an actual conflict because Dr. Vanderwerf wished to settle the case while Paradigm wished to litigate. The evidence presented does not support this assertion. The letter Langerman cites as support states that "Dr. Vanderwerf has made his position very clear ... he would like to defend this case if it does not result in his being exposed to excess liability. He has requested that Paradigm either waive the policy limits or settle within the policy limits...." Langerman, however, provided no evidence that Paradigm refused any demand by Dr. Vanderwerf to settle the case, and in fact the case ultimately settled within policy limits. Nor was there any evidence presented that the claim against Dr. Vanderwerf could have potentially resulted in an excess verdict. Thus, no conflict existed regarding settlement. *See Bogard,* 210 Cal.Rptr. at 583 ("there could be no conflict of interest until such time as there was a claim against the insureds over [the policy limits].").

¶ 21 Langerman also argues that an attorney may not undertake "dual representation" absent informed consent of both clients, citing Ethical Rule 1.7(b). Langerman maintains that, absent such informed consent, the dual representation cannot exist. Consequently, because there was no disclosure and consent in this case, Langerman could not have represented both Paradigm and Dr. Vanderwerf. We need not decide whether an attorney hired by an insurance company to represent an insured must obtain informed consent from both the insured and the insurer. Assuming that Langerman was required to obtain informed consent from both the insurer and the insured but failed to do so, then it may have violated an ethical rule, but that violation does not mandate a finding that Langerman did not, in fact, represent both clients. Simply put, the absence of informed consent does not negate the existence of a dual attorney-client relationship.

¶ 22 The trial court erred in granting summary judgment in favor of Langerman on the issue of whether Paradigm had an attorney-client relationship with Langerman.

## C. Malpractice

¶ 23 Paradigm asserted that Langerman committed malpractice and breached its ethical duty to Paradigm by failing to tender the defense of the lawsuit to Samaritan Insurance, and by breaching its alleged oral agreement not to represent plaintiffs against other Paradigm insureds. The trial court ruled that, because there was no "express agreement" no attorney-client relationship existed, and Paradigm was not entitled to sue Langerman for malpractice. Although this reasoning is incorrect, we will affirm the trial court's summary judgment if it is correct for any reason. *See Gonzalez,* 178 Ariz. at 97, 870 P.2d at 1193. We therefore consider whether the trial court properly granted summary judgment in favor of Langerman on the malpractice claim.

¶ 24 Generally, the relationship between attorney and client is contractual, and the "contract may be express or implied from the conduct of the parties." *Franko v. Mitchell,* 158 Ariz. 391, 397, 762 P.2d 1345, 1351 (App.1988). "The relationship is proved by showing that the party sought and received advice and assistance from the attorney in matters pertinent to the legal profession." *Id.* (quoting *In re Petrie,* 154 Ariz. 295, 299, 742 P.2d 796, 800 (1987)). Whether an attorney-client relationship exists is normally an issue for the trier of fact. *See id.*

¶ 25 With respect to this issue, the parties agree on the following facts. Paradigm hired Langerman to handle the malpractice lawsuit filed against Dr. Vanderwerf, and a successful defense would benefit both Paradigm and Dr. Vanderwerf. Langerman advised Paradigm extensively regarding the progress of the case, including the likelihood of success, and Langerman consulted with Paradigm on matters such as settlement and expert witnesses. Thus, Langerman in fact provided legal services to both Paradigm and Dr. Vanderwerf.

¶ 26 Because there is no evidence of any conflict between Paradigm and its insured, a dual attorney-client relationship existed, and Paradigm is entitled to bring a malpractice action against Langerman. The trial court therefore erred in finding that Paradigm

could not maintain a malpractice action against Langerman.[3]

### D. Langerman's Claim for Fees

■ ¶ 27 Finally, Paradigm argues that the trial court erred in granting summary judgment in favor of Langerman on its claim for fees. It rejected Paradigm's argument that it was entitled to withhold the fees pending the resolution of the malpractice and breach of contract claims. Paradigm does not dispute that Langerman's requested fees were reasonable. Rather, it contends that pending the resolution of Paradigm's counterclaims against Langerman for malpractice, it was entitled to withhold the fees to offset them against any malpractice damages ultimately assessed. In support of this theory, Paradigm cites *Andrews v. Wade & De Young, Inc., P.C.*, 950 P.2d 574 (Alaska 1997). Paradigm argues that the Alaska Supreme Court "never questioned the propriety of the clients' offsetting or withholding fees." We disagree because *Andrews* does not hold that a former client may withhold payment of attorneys' fees pending resolution of a malpractice claim against the attorney.

¶ 28 The court in *Andrews* cited *Rowland v. Harrison*, 320 Md. 223, 577 A.2d 51, 57–58 (1990), which held that if a client were successful in a malpractice action against a veterinarian, she would be entitled to damages if successful but would not be entitled to restitution of the fees paid for treatment of her horse. The court in *Andrews* also noted that "[i]t is conceivable that the attorney's malpractice caused less injury to the client than the cost of the services rendered." *Andrews*, 950 P.2d at 579.

¶ 29 Thus, the one case cited by Paradigm in support of its claim indicates that courts tend to separate malpractice awards from fee payment disputes, rather than allowing parties to withhold fees to offset a potential damage award. We therefore affirm the trial court's decision on this issue.

---

3. Paradigm further argues that the trial court erred in ruling that it was not a third-party beneficiary entitled to sue, that it could not sue under an equitable subrogation theory, and that as a matter of law no negligent misrepresentation occurred. Paradigm presented these issues

### III. CONCLUSION

¶ 30 We reverse the trial court's summary judgment in favor of Langerman on the malpractice claim, affirm the trial court's judgment in favor of Langerman on its claim for attorneys' fees, and remand to the trial court for proceedings consistent with this decision.

CONCURRING: RUDOLPH J. GERBER, Judge, and THOMAS C. KLEINSCHMIDT, Judge.

merely as alternative theories of recovery, arguing that we should consider them only if we hold that Paradigm cannot sue Langerman for malpractice. In light of our resolution of the malpractice issue, we need not address Paradigm's alternative theories.